1  KRISTEN J. NESBIT (SBN 2424260)
   E-Mail: knesbit@fisherphillips.com
2  FISHER & PHILLIPS LLP
   444 South Flower Street, Suite 1500
3  Los Angeles, California 90071
   Telephone: (213) 330-4500
4  Facsimile:  (213) 330-4501

5
   PHILIP J. SMITH (SBN 232462)
6  E-Mail:  psmith@fisherphillips.com
   FISHER & PHILLIPS LLP
7  One Embarcadero Center, Suite 2050
   San Francisco, California 94111
8  Telephone: (415) 490-9000
   Facsimile:  (415) 490-9001
9
   Attorneys for Defendants
10 SUNRUN INC. and COSTCO
   WHOLESALE CORPORATION
11

12              UNITED STATES DISTRICT COURT

13     NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

14

15 | MARY HUNTER GREEN,                | Case No:   5:21-CV-02387-VKD
16 |                      PLAINTIFF,   |
17 |       v.                          | **DECLARATION OF PHILIP J. SMITH IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**
18 | COSTCO WHOLESALE CORPORATION,     |
19 | SUNRUN INC. AND DOES 1 THROUGH 20,|
20 |                      DEFENDANTS.   | Hearing:           August 17, 2021
21 |                                   | Time:              10:00 a.m.
   |                                   | Courtroom:         2
   |                                   | Complaint Filed:   April 1, 2021
22 |                                   | Trial Date:        None Set

23

24

25

26

27

28
                                    1                      Case No. 5:21-CV-02387-VKD
   **DECLARATION OF PHILIP J. SMITH IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

**DECLARATION OF PHILIP J. SMITH**

I, PHILIP J. SMITH, declare and state as follows:

1.      I know all the facts stated in this declaration from my own personal knowledge. If sworn as a witness, I could and would competently so testify.  I submit this declaration in support of Sunrun Inc.'s ("Sunrun" or the "Company") motion to compel plaintiff Mary Hunter Green ("Ms. Green") claims in this case to arbitration.

2.      I am an attorney licensed to practice before all of the courts of the State of California and I am Of Counsel with Fisher & Phillips LLP, counsel of record for Defendants Sunrun Inc. and Costco Wholesale Corporation (collectively "Defendants") in the above-entitled matter.  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

3.      On April 1, 2021, Plaintiff filed the operative complaint in this action against Defendants. The Complaint alleges the following: (1) employment discrimination on the basis of physical disability; (2) employment discrimination on the basis of sex; (3) employment discrimination on the basis of age; (4) employment discrimination on the basis of opposition to forbidden practices; (5) failure to take all reasonable steps necessary to prevent discrimination and harassment from occurring; (6) failure to engage in a timely, good faith interactive process with employee to determine an effective reasonable accommodation; (7) failure to make reasonable accommodation; (8) creating a hostile work environment; (9) failure to provide timely meal periods; (10) failure to pay state premium wages; (11) failure to pay minimum and regular wages; (12) failure to pay all due wages upon termination; (13) failure to provide personnel records; (14) failure to provide all signed instruments in relation to employment; (15) failure to indemnify; (16) wrongful termination in violation of public policy; (17) intentional infliction of emotional distress; and (18) unfair and unlawful acts in violation of unfair competition law.  A true and correct copy of the complaint Plaintiff filed on April 1, 2021 is attached hereto as **Exhibit A** and incorporated herein by reference.

4.      On May 13, 2021, in accordance with California Code of Civil Procedure section 1281.2, I informed counsel for Plaintiff that Plaintiff was party to a binding and enforceable arbitration

**DECLARATION OF PHILIP J. SMITH IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

FP 40919219.1

agreement.   In my correspondence, I provided Plaintiff's counsel with a copy of the Arbitration

Agreement executed by Plaintiff on April 2, 2018.  A true and correct copy of the correspondence I sent

to Plaintiff's counsel on May 13, 2021 is attached hereto as **Exhibit B** and incorporated herein by

reference.

     5.      I subsequently met and conferred with Plaintiff's counsel on June 1, 8, 9, 14, 16, 21 and

22, 2021 regarding Defendants' demand to arbitrate Plaintiff's claims.  On June 22, 2021, Plaintiff's

counsel confirmed that Plaintiff would not stipulate to arbitrate her claims.  True and correct copies of

the foregoing correspondence is attached hereto as **Exhibit C**.

     6.      On or about June 29, 2021, I accessed the website for JAMS' Employment Arbitration

Rules, at https://www.jamsadr.com/rules-employment-arbitration/, a copy of which is attached hereto as

**Exhibit D** and incorporated herein by reference.

     I declare under penalty of perjury under the laws of the State of California and the United States

of America that the foregoing is true and correct.

     Executed on June 29, 2021 at Danville, California.



          By:   */s/Philip J. Smith*
              PHILIP J. SMITH

Case No. 5:21-CV-02387-VKD

**DECLARATION OF PHILIP J. SMITH IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

FP 40919219.1

# EXHIBIT A

1   Jose Z. Marin (SBN 291457)
    Jose Marin Law
2   Gervy Jhon Tesoro (SBN 298501)
    Tesoro Law
3   2537 Irving Street
    San Francisco, California 94122
4   Telephone: (415) 753-3539
5   Jose@JoseMarinLaw.com

6   Attorneys for Plaintiff
7   MARY HUNTER GREEN

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11  MARY HUNTER GREEN,                 CASE NO. 5:21-cv-02387
12                Plaintiff,           COMPLAINT FOR:
13       vs.
                                       1. **EMPLOYMENT DISCRIMINATION
14  COSTCO WHOLESALE CORPORATION,         ON THE BASIS OF PHYSICAL
                                          DISABILITY, CAL. GOV. CODE
15  SUNRUN INC., AND DOES 1 THROUGH 20,   § 12940(A), CAL. CODE REGS. TIT. 2 §
16                                        11064 *ET. SEQ.*;**
17                Defendants.          2. **EMPLOYMENT DISCRIMINATION
                                          ON THE BASIS OF SEX, CAL. GOV.
18  **DEMAND FOR JURY TRIAL**             CODE § 12940(A), CAL. CODE REGS.
                                          TIT. 2 §§ 11029 *ET. SEQ.*;**
19                                     3. **EMPLOYMENT DISCRIMINATION
20                                        ON THE BASIS OF AGE, CAL. GOV.
                                          CODE § 12940(A), CAL. CODE REGS.
21                                        TIT. 2 §§ 11074 *ET. SEQ.*;**
22                                     4. **EMPLOYMENT DISCRIMINATION
                                          ON THE BASIS OF OPPOSITION TO
23                                        FORBIDDEN PRACTICES, CAL.
                                          GOV. CODE § 12940(H), (M)(2);**
24                                     5. **FAILURE TO TAKE ALL
25                                        REASONABLE STEPS NECESSARY
                                          TO PREVENT DISCRIMINATION
26                                        AND HARASSMENT FROM
                                          OCCURRING, CAL. GOV. CODE §
27                                        12940(K);**
28                                     6. **FAILURE TO ENGAGE IN A
                                          TIMELY, GOOD FAITH**

INTERACTIVE PROCESS WITH
EMPLOYEE TO DETERMINE AN
EFFECTIVE REASONABLE
ACCOMMODATION, CAL. GOV.
CODE § 12940(N);
7. FAILURE TO MAKE REASONABLE
ACCOMMODATION, CAL. GOV.
CODE § 12940(M)(1);
8. CREATING A HOSTILE WORK
ENVIRONMENT, CAL. GOV. CODE
12940(J) AND CAL. CODE REGS. TIT.
2 §11029 *ET. SEQ.*;
9. FAILURE TO PROVIDE TIMELY
MEAL PERIODS, CAL. LAB. CODE
§§ 226.7, 512;
10. FAILURE TO PAY STATE PREMIUM
WAGES, CAL. LAB. CODE §§ 510,
1194;
11. FAILURE TO PAY MINIMUM AND
REGULAR WAGES, CAL LAB. CODE
§§ 204, 1194(a), 1194.2, 1197;
12. FAILURE TO PAY ALL DUE WAGES
UPON TERMINATION, CAL. LAB.
CODE §§ 201, 203, 218.6, AND CAL.
BUS. & PROF. CODE §§ 17000 *ET
SEQ.*;
13. FAILURE TO PROVIDE PERSONNEL
RECORDS, CAL. LAB. CODE § 1198.5;
14. FAILURE TO PROVIDE ALL SIGNED
INSTRUMENTS IN RELATION TO
EMPLOYMENT, CAL. LAB. CODE §
432;
15. FAILURE TO INDEMNIFY, CAL.
LAB. CODE § 2802;
16. WRONGFUL TERMINATION IN
VIOLATION OF PUBLIC POLICY;
17. INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS; AND
18. UNFAIR AND UNLAWFUL ACTS IN
VIOLATION OF UNFAIR
COMPETITION LAW, CAL. BUS. &
PROF. CODE §§ 17000 *ET SEQ.*

DEMAND FOR JURY TRIAL

## INTRODUCTION

1.  Plaintiff Mary Hunter Green (hereinafter "Plaintiff" or "Ms. Green") brings this action against Defendants Costco Wholesale Corporation, Sunrun Corporation, and Does 1 – 20 (hereinafter "Defendants") for employment discrimination on the basis of physical disability; discrimination on the basis of sex; discrimination on the basis of age; discrimination on the basis of opposition to forbidden practices; failure to take all reasonable steps to prevent discrimination, and harassment; failure to engage in a timely good faith process to determine an effective reasonable accommodation; failure to make reasonable accommodations based on disability; creating a hostile work environment; failure to provide timely meal periods; failure to provide paid rest-breaks; failure to pay overtime wages; failure to pay minimum and regular wages; failure to provide personnel records; failure to provide all signed instruments in relation to employment; failure to indemnify employee; failure to pay all due wages upon termination; wrongful termination in violation of public policy; and intentional infliction of emotional distress.

2.  The allegations made herein are based on Plaintiff's personal knowledge, except those allegations asserted on information and belief, which are based on a reasonable investigation under the circumstances.

3.  As a result of these violations, Ms. Green seeks relief from this Court, as described herein, and all available remedies under the California Government Code, California Labor Code, California Regulations, and for injunctive relief as this Court deems necessary.

4.  Defendants' conduct and acts are contrary to the public policy of the State of California and constitutes violation of California's Unfair Competition Law ("UCL"), Business and Professions Code section 17000 *et seq.*

5. Ms. Green has suffered injury in fact, and loss of property as a result of Defendants' egregious conduct.

6. Pursuant to UCL, Ms. Green seeks restitution, and injunctive relief requiring compliance with all applicable laws, and regulations in the future and preventing the unlawful and unfair business practices asserted herein.

7. Plaintiff brings this action as an aggrieved employee action under the California Labor Code.

8. Plaintiff also seek declaratory relief enumerating all wage and hour violations and other statutory violations so that Defendants and the general public will have clarity and guidance as to Defendants' future employment practices.

## JURISDICTION

9. This Court has diversity jurisdiction over the action pursuant to 28 United States Code section 1332.

10. The matter of controversy exceeds the sum or value of (seventy-five thousand dollars) $75,000, exclusive of interest and costs.

11. The controversy is between citizens of different states.

12. Plaintiff filed charges with the California Department of Fair Employment and Housing regarding Defendant's alleged discriminatory conduct during the relevant period herein.

13. Ms. Green exhausted all available administrative remedies.

14. On November 11, 2020, Ms. Green timely filed charges outlined in the instant complaint with the California Department of Fair Employment and Housing.

15. Subsequently, the California Department of Fair Employment and Housing issued a Notice Right to Sue letter. A true copy of the Notice Right to Sue letter is attached hereto as "Exhibit A."

## VENUE

16. Venue is proper before this Court because a substantial part of the event or omissions herein alleged gave rise to the claim in this judicial district. 28 U.S.C. § 1391(b)(2).

17. Venue would also be proper before this Court because the Defendant is subject to the Court's person jurisdiction with respect to this action. 28 U.S.C. § 1391(b)(3).

## INTRADISTRICT ASSIGNMENT

18. Assignment of this case and controversy to the San Jose Division is proper because a substantial part of the events or omissions giving rise to the claims occurred in Santa Clara County.

## THE PARTIES

19. Defendant Costco Wholesale Corporation (hereinafter "Costco") is a multi-billion-dollar global retailer with warehouse club operations in eight countries.

20. Costco is a membership warehouse club, with hundreds of locations worldwide.

21. Defendant Costco provides merchandise, including, but not limited to solar panels, appliances, furniture, electronics, and other products.

22. Defendant Sunrun, Inc. (hereinafter "Sunrun") is a corporation formed in the state of Delaware.

23. Defendant Sunrun is an American provider of residential solar panels and home batteries, headquartered in San Francisco, California, and is the nation's leading home solar, battery storage, and energy services company.

24. There are more than $3 billion in installed solar systems across 22 states, Puerto Rico, and the District of Columbia.

25. Defendant Sunrun's mission is, "to create a planet run by the sun."

//
//

26. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants, inclusive, are unknown to Plaintiff at this time, and therefore said Defendants are sued by such fictitious names.

27. Plaintiff will seek leave to amend this complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiff.

## STATEMENT OF FACTS CONSTITUTING THE CAUSES OF ACTION

28. Plaintiff Mary Hunter Green is a 60-year-old woman and resident of Mountain View, California.

29. Defendant Sunrun hired Ms. Green as a retail sales associate on or about March 15, 2018.

30. Defendant Sunrun hired Ms. Green to work at the San Leandro Location.

31. Ms. Green was hired on a full-time basis.

32. Ms. Green's was a nonexempt employee paid at sixteen dollars ($16.00) per hour.

33. Ms. Green earned commissions based on her solar panel sales, in addition to an hourly wage.

34. Ms. Green was hired to perform such services at the San Leandro location.

35. Ms. Green's duties required, inter alia, standing inside Costco at a sales kiosk to interact with, and inform Costco customers regarding solar panels for the purpose of making sales for Defendant Sunrun.

36. Ms. Green's duties required her to be available at a Sunrun sales kiosk to promote Sunrun solar panels.

37. Ms. Green's duties did not necessitate standing at all times to make sales of solar panels.

38. During the relevant period, Ms. Green was able to perform the essential functions of a sales associate.

39. Ms. Green physical disability prevented her from standing for long periods of time.

40. Ms. Green physical disability was chronic and debilitating.

41. Ms. Green requested to have a stool to sit on while working to ease her back pain.

42. Ms. Green's request to have a stool was denied by Defendants.

43. Defendants' denied Ms. Green's request allegedly due to the location of the kiosk within the Costco store.

44. Ms. Green requested a different location within the store, allowing use of a stool.

45. Ms. Green's request to have the Sunrun kiosk moved to different location within the Costco store allowing the use of a stool was denied.

46. Subsequently, Ms. Green requested a remote sales position.

47. Ms. Green's request to have a remote sales position was denied.

48. Ms. Green complained to Defendants after denial of request for a stool.

49. Defendants threatened Ms. Green that if Ms. Green requested a stool or accommodation again, Ms. Green would be fired.

50. Defendant Sunrun told Ms. Green that she could not get special treatment because of her age or because of her disability.

51. Defendant Sunrun told Ms. Green that her job would be harder if she kept asking for a stool.

52. Defendant Sunrun told Ms. Green at her age, no one would hire her and "fuck you," or words to that effect.

53. Defendant Sunrun told Ms. Green that a younger person could sell more and be a better employee.

54. Defendant then transferred Ms. Green, a woman over the age of 40, from the San Leandro location, to an inferior employment location.

55. The younger male employee received more favorable employment terms by receiving the San Leandro worksite over Ms. Green, a person over the age of forty (40).

56. Defendants' younger male associate received more favorable employment terms by receiving the San Leandro worksite over Ms. Green, a woman.

57. As a result of Defendants' transferring Ms. Green out of the San Leandro location, Ms. Green lost sales leads and current customers.

58. As a result of the adverse employment action, Ms. Green lost on her commissions.

59. Ms. Green was fired on December 13, 2019.

60. As a result of the adverse employment action and Defendant's egregious conduct, Ms. Green suffered emotional distress.

61. Ms. Green was not provided with one and a half (1.5) times the regular rate of pay for hours worked in excel of 8 per day or 40 per week.

62. Ms. Green was not provided a 30-minute unpaid meal period for every five hours worked.

63. Defendants did not compensate Ms. Green for any interrupted or missed meal periods.

64. Defendants did not reimburse Ms. Green for expenses made in the course of her employment.

65. Defendant did not provide or make a copy of Ms. Green's employment file reasonable available upon request.

66. Defendant did not provide or make a copy all signed documents relating to employment available upon request.

## FIRST CAUSE OF ACTION
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF PHYSICAL DISABILITY,
### AGAINST EACH AND ALL DEFENDANTS
(Cal. Gov. Code § 12940(a) and Cal. Code Regs. tit. 2 § 11064 *et. seq.*)

67. Plaintiff realleges all paragraphs set forth above and incorporates them by reference herein.

68. It is an unlawful employment practice for an employer, because of the physical disability to

discharge a person from employment or to discriminate against the person in compensation, or in terms, conditions, or privileges of employment. Cal. Gov. Code § 12940(a).

69. The great state of California has declared a necessity to protect and safeguard the right and opportunity of all persons to hold employment without discrimination or abridgment on account of physical disability. Cal. Gov. Code § 12920, Cal. Code Regs. tit. 2 § 11006.

70. Defendants during the relevant period violated California Government Code section 12940 (a), by discriminating against Plaintiff due to a physical disability, as defined in California Government Code section 12926 (m) and California Code of Regulations Title 2 section 11065(d)(2).

71. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

72. During the relevant period, Defendants were Plaintiff's employers.

73. During the relevant period, Defendants, and each of them, knew Plaintiff was physically disabled.

74. Defendants discriminated against Plaintiff because of her disability.

75. Defendants discriminated against Plaintiff in compensation because of her disability.

76. Defendants discriminated against Plaintiff in terms of employment because of her disability.

77. Defendants discriminated against Plaintiff in terms of conditions of employment because of her disability.

78. Defendants discriminated against Plaintiff in terms of privileges of employment because of her disability.

## SECOND CAUSE OF ACTION
### EMPLOYMENT DISCRIMINATION BASED ON SEX
AGAINST EACH AND ALL DEFENDANTS
(Cal. Gov. Code § 12940(a) and Cal. Code Regs. tit. 2 §§ 11029 *et. seq.*)

79. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

80. It is an unlawful employment practice for an employer, because of sex to discharge a person from employment or to discriminate against the person in compensation, or in terms, conditions, or privileges of employment. Cal. Gov. Code § 12940(a), Cal. Code regs. tit. 2 §§ 11029 *et seq.*

81. Defendants during the relevant period violated California Government Code section 12940(a), by discriminating against Plaintiff due to sex, as defined in California Government Code section 12926 (r)(2) and California Code of Regulations Title 2 section 11030(c).

82. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

83. During the relevant period, Defendants were Plaintiff's employers.

84. During the relevant times, Defendants, and each of them, knew Plaintiff was a female.

85. Defendants discriminated against Plaintiff because of her sex.

86. Defendants discriminated against Plaintiff in compensation because of her sex.

87. Defendants discriminated against Plaintiff in terms of employment because of her sex.

88. Defendants discriminated against Plaintiff in terms of conditions of employment because of her sex.

89. Defendants discriminated against Plaintiff in terms of privileges of employment because of her sex.

### THIRD CAUSE OF ACTION
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF AGE
### AGAINST EACH AND ALL DEFENDANTS
(Cal. Gov. Code 12940(a) and Cal. Code Regs. tit. 2 §§ 11074 *et. seq.*)

90. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

91. It is an unlawful employment practice for an employer, because of age to discharge a person from employment or to discriminate against the person in compensation, or in terms, conditions, or privileges of employment. Cal. Gov. Code § 12940(a), Cal. Code regs. tit. 2 §§ 11074 *et seq.*

92.   Defendants during the relevant period violated California Government Code section 12940(a), by discriminating against the plaintiff due to age, as defined in California Government Code section 12926(b) and California Code of Regulations Title 2 section 11075(b).

93.   During the relevant period, Plaintiff was an employee of Defendants, and each of them.

94.   During the relevant period, Defendants were Plaintiff's employers.

95.   During the relevant period, Plaintiff was over the age of forty (40).

96.   During the relevant period, Defendants, and each of them, knew Plaintiff was over the age of forty (40).

97.   Defendants discriminated against Plaintiff because of her age.

98.   Defendants discriminated against Plaintiff in compensation because of her age.

99.   Defendants discriminated against Plaintiff in terms of employment because of her age.

100.   Defendants discriminated against Plaintiff in terms of conditions of employment because of her age.

101.   Defendants discriminated against Plaintiff in terms of privileges of employment because of her age.

**FOURTH CASE OF ACTION**
EMPLOYMENT DISCRIMINATION ON THE BASIS OF OPPOSITION TO FORBIDDEN PRACTICES
AGAINST ALL DEFENDANTS
(Cal. Gov. Code §§ 12940 (h), (m)(2))

102.   Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

103.   It is an unlawful employment practice for an employer, to harass, discharge, expel or otherwise discriminate against any person because the person opposed any practice forbidden under the Fair Employment and Housing Act ("FEHA"). Cal. Gov. Code § 12940(h).

104. Defendants violated California Government Code section 12940(h) by subjecting Plaintiff to adverse employment actions.

105. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

106. During the relevant period, Defendants were Plaintiff's employers.

107. Plaintiff engaged in two separate protected activities, namely, opposing employment practices prohibited by FEHA and requesting reasonable accommodation of use of a stool to ease pain from a physical disability. Cal. Gov. Code § 12940(m)(2).

108. Defendants, and each of them, required Plaintiff to work outside of her physical limitations, demoted Plaintiff, and threaten to terminate Plaintiff's employment.

109. The adverse employment action taken by Defendant was substantially motivated by Plaintiff's protest of Defendants' employment discrimination based on a physical disability.

110. Plaintiff was harmed, and the Defendants' decision to take adverse employment action was a substantial factor in causing Plaintiff harm.

### FIFTH CAUSE OF ACTION
### FAILURE TO TAKE ALL REASONABLE STEPS NECESSARY TO PREVENT DISCRIMINATION AND HARRASMENT FROM OCCURING
### AGAINST EACH AND ALL DEFENDANTS
### (Cal. Gov. Code 12940(k))

111. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

112. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

113. During the relevant period, Defendants were Plaintiff's employers.

114. Plaintiff was subject to discrimination, harassment, and retaliation in the course of her employment by Defendants.

115. Defendants failed to take all reasonable steps to prevent the discrimination, harassment and

1   retaliation from occurring in violation of California Government Code section 12940(k).

2   116.  As a result, Plaintiff was harmed.

3   117. Defendants' failure to take all reasonable steps to prevent the discrimination, harassment,

4
    and retaliation from occurring was a substantial factor in causing Plaintiff's harm.
5
                              **SIXTH CAUSE OF ACTION**
6   FAILURE TO ENGAGE IN A TIMELY, GOOD FAITH INTERACTIVE PROCESS WITH
7   EMPLPOYEE TO DETERMINE AN EFFECTIVE REASONABLE ACCOMMODATION
                              AGAINST ALL DEFENDANTS
8                           (Cal. Gov. Code § 12940 (n))

9   118.  Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and
10
    charges as though fully set forth herein.
11
12  119. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

13  120. During the relevant period, Defendants were Plaintiff's employers.

14  121. During the relevant times, Defendants, and each of them, knew Plaintiff had a physical

15  disability.
16
    122. During the relevant period, defendants violated California Government Code section
17
18  12940(n), by failing to engage in an interactive process with plaintiff, who had a known physical

19  disability after Plaintiff requested accommodations.

20  123. Defendants failed to participate in a timely, good faith interactive process with plaintiff to

21  determine whether reasonable accommodation could be made.

22  124. Plaintiff was harmed.
23
    125. The failure of Defendants, to engage in a good faith interactive process was a substantial
24
25  factor in causing Plaintiff harm.

26  //
    //
27  //
    //
28

**SEVENTH CAUSE OF ACTION**
<u>FAILURE TO MAKE REASONABLE ACCOMODATION</u>
AGAINST ALL DEFENDANTS
(Cal. Gov. Code § 12940 (m)(1))

126. Plaintiff realleges all paragraphs set forth above and incorporates them by reference as though they were fully set forth herein.

127. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

128. During the relevant period, Defendants were Plaintiff's employers.

129. During the relevant times, Defendants, and each of them, knew Plaintiff had a physical disability.

130. During the relevant times, Plaintiff was able to perform the essential functions of her job with reasonable accommodation for her physical disability.

131. Defendants violated California Government Code section 12940 (m)(1) by failing to provide Plaintiff with reasonable accommodations based on a known physical disability.

132. The Plaintiff was harmed when Defendant denied Plaintiff's reasonable accommodation.

133. The failure of Defendants to provide Plaintiff with reasonable accommodation was a substantial factor in causing Plaintiff's harm.

**EIGHTH CAUSE OF ACTION**
<u>UNLAWFUL HARRASMENT AND CREATING HOSTILE WORK ENVIROMENT</u>
AGAINST EACH AND ALL DEFENDANTS
(Cal. Gov. Code § 12940(j), and Cal. Code Regs. tit. 2 §§ 11029, 11064, 11074)

134. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

135. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

136. During the relevant period, Defendants were Plaintiff's employers.

//
//

137. During the relevant period, Defendant violated California Government Code section 12940(j), by creating a hostile work environment for the plaintiff because of her sex, physical disability, and age.

138. The harassing conduct was server or pervasive.

139. A reasonable person with a physical disability in Plaintiff's circumstance would have considered the work environment to be hostile or abusive.

140. Plaintiff considered the work environment to be hostile or abusive.

141. Plaintiff was harmed.

142. Defendants' harassing conduct was a substantial factor causing Plaintiff harm.

### NINTH CAUSE OF ACTION
### FAILURE TO PROVIDE TIMELY MEAL PERIODS
### AGAINST DEFENDANT SUNRUN
(Cal. Lab. Code §§ 226.7, 512)

143. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

144. California Labor Code section 512 requires employers to provide every employee with an uninterrupted meal period of not less than 30 consecutive minutes, for every period of work exceeding five hours.

145. California Labor Code section 226.7 requires an employer to provide every employee with an uninterrupted rest period of not less than 10 minutes, for every period worked of four hours, or substantial portion thereof.

146. During the relevant period, Plaintiff regularly worked in excess of eight hours per day, and was thereby entitled to take uninterrupted two 10-minute rest periods on each day of work.

147. Defendants failed and refused to provide Plaintiff with uninterrupted rest periods, and failed to compensate Plaintiff for missed meal and rest periods, as required by California Labor

Code section 226.

148. As alleged herein, Plaintiff is not exempt from the meal and rest break requirements.

149. Consequently, Plaintiff is owed one hour of pay at Plaintiff's then regular hourly rate for each day that Plaintiff was denied such meal periods and is owed one hour of pay at Plaintiff's regular hourly rate, or the requisite minimum wage, whichever is greater, for each day that Plaintiff was denied such rest periods for an amount to be proven at trial, plus interest, costs of suit, and attorney's fees and costs.

### TENTH CAUSE OF ACTION
### FAILURE TO PAY STATE PREMIUM WAGES
### AGAINST DEFENDANT SUNRUN
(Cal. Lab. Code §§ 510(a), 1194)

150. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

151. California Labor Code section 510(a) establishes an eight (8) hour workday and a 40-hour workweek, and provides that work in excess of eight (8) hours in one day or 40 hours in one week is to be compensated at one and one-half (1 ½) the regular rate of pay.

152. As aforementioned in paragraphs 142-148, during the relevant period, Defendants failed and refused to compensate Plaintiff for missed mean rest periods as required by California Labor code section 226.

153. As such, Plaintiff worked in excess of eight (8) hours in a workday or 40 hours in a workweek without compensation at either the minimum wage or overtime.

154. California Labor Code section 1194 (a) states: Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of

the full amount of the overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit.

155.  As a result, Plaintiff is entitled to the unpaid balance of the full amount, to be proven at trial, of overtime compensation owed, as well as interest, reasonable attorney's fees and costs.

**ELEVENTH CAUSE OF ACTION**
FAILURE TO PAY MINIMUM AND REGULAR WAGES
(Cal. Lab. Code §§ 204, 1194(a), 1194.2, 1197, and IWC WAGE ORDERS)

156.  Plaintiff incorporates and reasserts all proceeding paragraphs, pleadings, allegation, and charges as though fully set forth herein.

157.  Pursuant to Labor Code section 1197, payment of less than the minimum wage fixed by law is unlawful. An employer violates the minimum wage statute even if the average rate for paid and unpaid hours exceeded the minimum wage.  Under California law, Plaintiff is entitled to at least the minimum wage for all time worked.

158.  California Labor Code section 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." Moreover, "an employee's 'wages' or 'earnings' are the amount the employer has offered or promised to pay, or has paid pursuant to such offer or promise, as compensation for that employee's labor." *See* Prachasaisoradej v. Ralphs Grocery Co., Inc. (2007) 42 Cal.4th 217, 228

159.  Defendants violated California Labor Code section 1197 by failing to pay Plaintiff the legal minimum wage for all hours worked. Specifically, Plaintiff was not compensated at all for some hours worked, including work performed during off-duty time or work during meal periods. Such meal breaks were not voluntarily waived. Plaintiff were not paid these wages when due as required by Labor Code section 204 and have not been paid to date.

160. The violation of California's minimum wage law was substantial and occurred regularly.

*161.* California Labor Code sections 1197, 204 are enforceable by private civil action pursuant to California Labor Code section 1194 and California Business and Professions Code section 17000 *et seq.*

162. California Labor Code section 1194(a) states: Notwithstanding an agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit.

163. In addition, pursuant to Labor Code section 1194.2, Plaintiffs are entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid.

164. As such, this cause of action is under California Labor Code section 1194 to recover wages in amounts to be proven at trial, on account of Defendants' acts or omissions violating or causing violations of California Labor Code section 1197, 204.

## TWELFTH CAUSE OF ACTION
### FAILURE TO PAY ALL DUE WAGES UPON TERMINATION
(Cal. Lab. Code § 210, 203, 218.6 and Ca. Bus. § Prof. Code §§ 17000 *et seq.*)

165. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

166. California Labor Code section 201 requires employers to provide payment of all wages earned and unpaid immediately at the time of discharge.

167. California Labor Code section 203 (a) require the employer who fails to pay all wages earned and unpaid to continue payment of the discharged employee as a penalty from the due date thereof at the same rate until paid for a maximum period of thirty days.

168. Defendant failed to immediately provide payment to the Plaintiff of all wages earned including meal breaks, and overtime wages.

169. As a result of their unlawful, past and continuous unlawful conduct, Defendants have reaped and continue to reap unfair benefits of their unlawful conduct.

170. Defendants are unjustly enriched as they have maintained a benefit derived from its unlawful conduct, policy and trade practices.

171. If Defendants are not enjoined, Defendants will continue violate California law and the rights of their employees with impunity.

172. Injunctive relief and an order for restitution and/or disgorgement of all unlawfully benefits derived from unfair practices and the restitution of Plaintiff are within the jurisdiction of this Court under California Business and Professions Code section 17203 and are necessary to prevent further violation of the rights of California employees.

## THIRTEENTH CAUSE OF ACTION
### FAILURE TO INDEMNIFY
(Cal. Lab. Code § 2802)

173. Plaintiff incorporates and reasserts all preceding paragraph, pleadings, allegations, and charges as though fully set forth herein.

174. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

175. During the relevant period, Defendants were Plaintiff's employers.

176. Plaintiff made out of pocket expense to perform her work duties and was not reimbursed for such expenses such as mileage and other related expenses.

177. Pursuant to California Labor Code section 2802, Defendant failed to indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of her duties her and obedience to the directions of the Defendant.

178.   Specifically, during the relevant period, Defendant failed to reimburse Plaintiff for expenses incurred for travel expenses and mileage required to perform work duties.

## FOURTEENTH CAUSE OF ACTION
### WRONGFUL DISCRIMINATION IN VIOLATION OF PUBLIC POLICY
(Cal. Lab. Code § 12920)

179.   Plaintiff incorporates and reasserts all preceding paragraph, pleadings, allegations, and charges as though fully set forth herein

180.   Defendants, and each of them, discharged Plaintiff in violation of the public policy set forth in California Government Code section 12920.

181.   California Government Code section 12920 declared discrimination in employment, which encompasses violations of California Government Code sections 12940(a)(h)(j)(k)(n), violated the public policy of the State of California.

182.   The Defendants' discharge of Plaintiff was substantially motivated at least in part by (a) Plaintiff's, physical disability, sex, and age, (b), failure or refusal to provide Plaintiff with a reasonable accommodation, (c) failure or refusal to engage with Plaintiff in a good faith interactive process, (d) and Plaintiff's engagement in protected activities.

183.   As a result of her discharge, Plaintiff was harmed.

184.   Defendants' decision to discharge Plaintiff was a substantial factor in causing Plaintiff's harm.

## FIFTEENTH CAUSE OF ACTION
### FAILURE TO PROVIDE PERSONNEL RECORDS
AGAINST ALL DEFENDANTS
(Cal. Lab. Code. § 1198.5)

185.   Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

186.   California Labor Code section 1198.5, states, in relevant part:

(a) Every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee.

(b)(1) The employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to inspect the records, and the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request.

(k) If an employer fails to permit a current or former employee, or his or her representative, to inspect or copy personnel records within the times specified in this section, or times agreed to by mutual agreement as provided in this section, the current or former employee or the Labor Commissioner may recover a penalty of seven hundred fifty dollars ($750) from the employer.(l) A current or former employee may also bring an action for injunctive relief to obtain compliance with this section, and may recover costs and reasonable attorney's fees in such an action.

187. Defendant failed to make the contents of Plaintiff's personnel records available for inspection within 30 calendar days from the date the Defendant received Plaintiff's written request.

188. The unlawful and unfair conduct alleged in this complaint continues, and there is no indication that Defendants have refrained or will refrain from such activity in the future.

189. Plaintiff believes and alleges that if Defendants are not enjoined from the conduct set forth in this complaint, Defendants will continue to violate the California Labor Code requirements with impunity.

**SIXTEENTH CAUSE OF ACTION**
<u>FAILURE TO PROVIDE ALL SIGNED INSTRUMENTS RELATING TO EMPLOYMENT</u>
AGAINST EACH AND ALL DEFENDANTS
(Cal. Lab. Code § 432)

190. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

191. During the relevant period, Plaintiff was an employee of Defendants, and each of them.

192. During the relevant period, Defendants were Plaintiff's employers.

193. Plaintiff, following her termination of employment, requested all her personnel record including all signed documents signed in relation to obtaining or holding employment.

194. Defendants failed to provide Plaintiff all documents signed in relating to obtaining or holding of employment following Plaintiff's request in violation of California Labor Code section 432.

## SEVENTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
AGAINST EACH AND ALL DEFENDANTS

195. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

196. Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted sever and outrageous misconduct.

197. Defendants' retaliatory threat to terminate the Plaintiff's employment if she continued to request reasonable accommodations was done with intent of causing, or reckless disregard for the probability of causing emotional distress to Plaintiff.

198. Defendants' harassing to act of telling the Plaintiff she could not get special treatment because of her age or disability, was done with intent of causing, or reckless disregard for the probability of causing emotional distress to Plaintiff.

199. Defendants' harassing to act of telling the Plaintiff, her job would be harder if she kept asking for a stool was done with intent of causing, or reckless disregard for the probability of causing emotional distress to Plaintiff.

200. Defendants' harassing act of telling the Plaintiff at her age, no one would hire her and "fuck you," or words to that effect was done with the intent of causing, or reckless disregard for the probability of causing emotional distress to Plaintiff.

201. Defendants' harassing to acts such as telling the Plaintiff, "she could not get special treatment because of her age or disability," was done with the intent of causing, or reckless disregard for the probability of causing emotional distress to Plaintiff.

202. Defendants' discriminatory act of demoting Plaintiff, a woman over the age of forty (40), from San Leandro, by transferring Plaintiff to an inferior employment location, and replaced by a male employee was done with the intent of causing, or reckless disregard for the probability of causing emotional distress to Plaintiff.

203. Defendants were aware that treating Plaintiff in the manner alleged above, would cause emotional distress.

204. Defendants' outrageous extreme and conduct was the actual and proximate cause of Plaintiff's severe emotional distress.

205. Defendants' conduct was a substantial faction in causing Plaintiff's severe emotional distress.

**EIGHTEENTH CAUSE OF ACTION**
UNFAIR AND UNLAWFUL ACTS IN VIOLATION OF UNFAIR COMPETITION LAW
AGAINST EACH AND ALL DEFENDANTS
(Cal. Bus. & Prof. Code §§ 17000 et. seq.)

206. Plaintiff incorporates and reasserts all preceding paragraphs, pleadings, allegations, and charges as though fully set forth herein.

207. On information and belief, and at all relevant times, Plaintiff alleges, pleads, and charges that Defendants, by and through policies and practices, engaged in unlawful activity prohibited by California Business and Professions Code section 17000 *et seq.*, including the following: failing to provide meal, and break periods or compensation in lieu thereof, in violation of state law; failing to compensate Plaintiff for all hours worked, and not paying or improperly paying for work beyond eight hours in a workday or 40 hours in a week, in violation of state minimum wage laws and state and federal overtime laws; failing to pay all wages due at the appropriate periodic intervals as

required by California Labor Code section 204; failing to pay all wages owed timely upon termination of the employment relationship, in violation of state law; failing to provide accurate itemized wage statements stating all hours worked, all applicable pay rates, or all gross and net wages earned, in violation of state law; and failing to maintain records showing when Plaintiff began and ended each work period and meal period, or showing total daily hours worked or all wages earned, in violation of federal and state law.

208. Defendants' actions as alleged herein constitute false, fraudulent, unlawful, unfair, and deceptive business practices, within the meaning of California Business and Professions Code section 17000 *et. seq.* Plaintiff has suffered injury in fact and has lost money or property as a result of such unfair competition.

209. Plaintiff is entitled to an injunction and other equitable relief against Defendants for such unlawful practices to prevent future damage for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

210. As a result of Defendant's unlawful acts described herein, Defendants have reaped and continue to reap unfair benefits and unlawful profits at the expense of Plaintiff. Defendants should be enjoined from this activity and made to disgorge the ill-gotten gains and restore to Plaintiff the wrongfully withheld wages, pursuant to California Business and Professions Code section 17203, as well as to enforce penalty provisions pursuant to California Business and Professions Code section 17202.

211. Plaintiff is informed and believes, and thereon allege, that Defendants have been and continue to be unjustly enriched through false, fraudulent, unlawful, unfair, and deceptive business practices as alleged throughout this Complaint. Plaintiff is and has been prejudiced by Defendants' unfair trade practices.

212. As a direct and proximate result of Defendants' unfair business practices, Plaintiff is entitled to equitable and injunctive relief from Defendants', including full restitution and/or disgorgement of all wages which have been unlawfully withheld from them, and enjoinment of Defendants to cease and desist from engaging in the practices described herein.

213. As a direct and proximate result of Defendants' unfair business practices, Plaintiff is entitled, in accordance with California Business and Professions Code section 17202, enforcement of penalties resulting from the business acts and practices described herein, and entitled to enjoinment of Defendants to cease and desist from engaging in the practices described herein.

214. On information and belief, the unlawful conduct alleged herein is continuing, and there is no indication that Defendants will cease such activity. Plaintiff alleges that if Defendants are not enjoined from the conduct set forth in this Complaint, Defendants will continue the practice of failing to properly compensate employees for all wages owed; provide accurate wage statements; maintain required records; or pay all wages owed upon discharge.

## DEMAND FOR JUDGMENT FOR THE RELIEF SOUGHT

WHEREFORE, Plaintiff prays for judgment before this Court against each and all Defendants and each of them as follows:

**As to claims one (1) through eight (8), including eighteen (18):**

215. For a money judgment representing compensatory damages or special damages, representing lost wages, past and future loss of wages, together with interest thereon of the amounts to be proven at trial.

216. For punitive damages, pursuant to Civil Code section 3294 in amounts sufficient to punish Defendants for the wrongful conduct alleged herein and to deter such conduct in the future, amount to be proven at trial.

217.  For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment in this matter, amount to be proven at trial;

218.  For a declaratory judgment reaffirming Plaintiff's rights under the law and condemning Defendants' unlawful practices.

219.  For injunctive relief barring Defendants' unlawful and discriminatory policies and practices in the future.

220.  For any other in equity as the Court deems proper; and

221.  For attorney's fees and cost of suit.

**As to claim nine (9) through twelve (12):**

222.  For a money judgment representing unpaid wages, and all other sums of money permitted and required by law together with interest thereon of the amounts to be proven at trial.

223.  For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment in this matter.

224.  For a declaratory judgment reaffirming Plaintiff's rights under the law and condemning Defendants' unlawful practices;

225.  For injunctive relief barring Defendants' unlawful employment policies and practices in the future.

226.  For injunctive relief disgorging any benefit derived from Defendants' unlawful and unfair business practices.

227.  For injunctive relief restoring Plaintiff to Plaintiff's former position in relation to Defendants.

228.  For any other in equity as the Court deems proper.

229.  For attorney's fees and cost of suit.

**As to all claims:**

230. For costs of suit, and attorneys' fees.

231. For pre-judgement and post-judgment interest;

232. For any other in equity as the Court deems proper and;

233. For any other relief that is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial on all issues by jury.

DATED:  April 1, 2021

Jose Z. Marin, Esq.
Attorney for Plaintiff

**FEDERAL RULE OF CIVIL PROCEDURE 7**

**COPY 1**

Pursuant to Federal Rule of Civil Procedure, Plaintiff, through undersigned counsel, states as follows:
There is not parent corporation or any publicly held corporation owning 10% or more of its stock
Fed. R. Civ. P. 7.1

DATED:  April 1, 2021

José Z. Marin, Esq.
Attorney for Plaintiff

1

## FEDERAL RULE OF CIVIL PROCEDURE 7

2

### COPY 2

3

4    Pursuant to Federal Rule of Civil Procedure, Plaintiff, through undersigned counsel, states as follows:

5    There is not parent corporation or any publicly held corporation owning 10% or more of its stock

     Fed. R. Civ. P. 7.1

6

7    DATED:  April 1, 2021

8

     Jose Z. Marin, Esq.

9    Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

November 11, 2020

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202011-11779911
      Right to Sue: Green / Sunrun Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

November 11, 2020

Mary Green
650 Castro Street, #120-338
Mountain View, California 94041

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202011-11779911
      Right to Sue: Green / Sunrun Inc. et al.

Dear Mary Green:

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
November 11, 2020 because an immediate Right to Sue notice was requested. DFEH
will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of

Mary Green                                        DFEH No. 202011-11779911

                            Complainant,

vs.

Sunrun Inc.
595 Market Street
San Francisco, California 94105

Shaun Chouinard
, California

                            Respondents

1. Respondent **Sunrun Inc.** is an **employer Sunrun Inc.** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Shaun Chouinard** as individual Co-Respondent(s).

3. Complainant **Mary Green**, resides in the City of **Mountain View**, State of **California**.

4. Complainant alleges that on or about **December 13, 2019**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sexual harassment- hostile environment.

**Complainant was discriminated against** because of complainant's sex/gender, disability (physical or mental), medical condition (cancer or genetic characteristic), age (40 and over), marital status, other, sexual harassment- hostile environment and as a result of the discrimination was terminated, denied equal pay, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and

-1-
*Complaint – DFEH No. 202011-11779911*

Date Filed: November 11, 2020

1  as a result was terminated, denied equal pay, denied any employment benefit or privilege,
2  denied reasonable accommodation for a disability, denied or forced to transfer.

3  **Additional Complaint Details:**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-2-
27  *Complaint – DFEH No. 202011-11779911*

28  Date Filed: November 11, 2020

1   VERIFICATION

2   I, **Jose Z Marin,** am the **Attorney** in the above-entitled complaint.   I have read the
    foregoing complaint and know the contents thereof.  The matters alleged are based
3   on information and belief, which I believe to be true.

4
    On November 11, 2020, I declare under penalty of perjury under the laws of the State
5   of California that the foregoing is true and correct.

6                                                                          **San Francisco, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                                -3-
27                               *Complaint – DFEH No. 202011-11779911*

28   Date Filed: November 11, 2020

**EXHIBIT B**



fisherphillips.com

**San Francisco**
One Embarcadero Center
Suite 2050
San Francisco, CA  94111

(415) 490-9000 Tel
(415) 490-9001 Fax

**Writer's Direct Dial:**
(415) 490-9027

**Writer's E-mail:**
psmith@fisherphillips.com

May 13, 2021

<u>**VIA EMAIL**</u>

Jose Z. Marin, Esq.
Jose Marin Law
Gervy Jhon Tesoro, Esq.
Tesoro Law
2537 Irving Street
San Francisco, California 94122

      Re:    *Mary Hunter Green v. Sunrun Inc., et al. (United States District Court, Northern District of California, Case No. 5:21-cv-02387)*

Dear Counsel:

      Per our prior correspondence, Fisher & Phillips LLP has been retained to represent Defendants Sunrun Inc. ("Sunrun") and Costco Wholesale Corporation ("Costco") (Sunrun and Costco will collectively be referred to as "Defendants").  I am writing to request that Plaintiff Mary Hunter Green stipulate to arbitrate her claims against Defendants, and dismiss or stay her civil lawsuit, because she executed a valid and enforceable written arbitration agreement covering every cause of action asserted in her Complaint against Defendants.  Please accept this letter as my clients' effort to meet and confer on this issue pursuant to California *Code of Civil Procedure* section 1281.2.

      Ms. Hunter Green executed an agreement to arbitrate any claims arising out of, or relating to, her employment with Sunrun on April 2, 2018, a copy of which is attached as **Exhibit A**. (Attachments A is referred to hereafter as the "Arbitration Agreement").

      The Arbitration Agreement requires Plaintiff to use arbitration to resolve "ANY AND ALL CONTROVERSIES, CLAIMS OR DISPUTES […] ARISING OUT OF, OR RELATING TO, OR RESULTING FROM [HER] EMPLOYMENT […] OR THE TERMINATION OF [HER] EMPLOYMENT [INCLUDING] CLAIMS FOR WRONGFUL TERMINATION OF EMPLOYMENT, VIOLATION OF PUBLIC POLICY[,] INFLICTION OF EMOTIONAL DISTRESS [,] UNFAIR BUSINESS PRACTICES [,] CLAIMS OF HARASSMENT, DISCRIMINATION OR RETALIATION [,] UNDER ANY AND ALL FEDERAL, STATE AND MUNICIPAL STATUTES, REGULATIONS, ORDINANCES, OR COMMON LAW[,] CLAIMS FOR NON-PAYMENT, OR INCORRECT PAYMENT OF WAGES[,] AND ANY FEDERAL, STATE, OR MUNICIPAL LAWS CONCERNING WAGES[,] CLAIMS OF FAILURE TO PAY WAGES DUE ON TERMINATION, FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS, ENTITLEMENT TO WAITING TIME PENALTIES[,] OTHER CLAIMS INVOLVING EMPLOYEE COMPENSATION ISSUES,

**Fisher & Phillips LLP**
Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Fort Lauderdale • Gulfport • Houston
Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

FP 40494793.1

Jose Z. Marin, Esq.
Gervy Jhon Tesoro, Esq.
May 13, 2021
Page 2


INLCUDING BUT NOT LIMITED TO CLAIMS UNDER […] THE CALIFORNIA LABOR CODE."

Here, Plaintiff's Complaint against Sunrun and Costco alleges causes of action predicated solely upon her employment with Sunrun and Costco: (1) discrimination on the basis of physical disability; (2) discrimination on the basis of sex; (3) discrimination on the basis of age; (4) discrimination on the basis of opposition to forbidden practices; (5) failure to take all reasonable steps necessary to prevent discrimination and harassment from occurring; (6) failure to engage in a timely, good faith interactive process; (7) failure to provide reasonable accommodation; (8) creating a hostile work environment; (9) failure to provide timely meal periods; (10) failure to pay state premium wages; (11) failure to pay minimum and regular wages; (12) failure to pay all wages due upon termination; (13) failure to provide personnel records; (14) failure to provide all signed instruments in relation to employment; (15) failure to indemnify; (16) wrongful termination in violation of public policy; (17) intentional infliction of emotional distress; and (18) unfair and unlawful acts in violation of unfair competition law (collectively, Plaintiff's "Claims").

It indisputably follows that Plaintiff's Claims against Defendants are alleged to have arisen out of her employment with Sunrun and Costco and are thus subject to arbitration under the terms of the Arbitration Agreement.

Plaintiff's Arbitration Agreement also satisfies the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83.  Specifically, the Arbitration Agreement: 1) provides for a neutral arbitrator; 2) does not restrict Plaintiff's remedies; 3) permits sufficient discovery; and 4) will allow the arbitrator to provide a written reasoned opinion. Finally, Sunrun will pay for the costs of arbitration, as set forth in the Arbitration Agreement and under applicable law.

We are hopeful that Plaintiff will abide by the terms of her Arbitration Agreement and that you will recognize the enforceability of the Arbitration Agreement.  Please advise us in writing as to Plaintiff's intentions and whether she will agree to stipulate to arbitration no later than Friday, May 21, 2021 at 5:00 p.m.

Should you wish to discuss this issue further, please do not hesitate to contact me.

Very truly yours,

*Philip Smith*

Philip Smith
For FISHER & PHILLIPS LLP

PS:ts
Enclosures

# EXHIBIT A



## SUNRUN INC.
## EMPLOYEE CONFIDENTIALITY, INVENTIONS ASSIGNMENT AND ARBITRATION AGREEMENT (CALIFORNIA)

In consideration of my employment or continued employment by Sunrun Inc., including its subsidiaries and affiliates (collectively the "Company") and benefits thereof (including access and receipt of the Company's trade secrets, Confidential Information, goodwill, and training), and the compensation the Company may pay to me now and during my employment, I agree to the terms of this Employee Confidentiality, Inventions Assignment and Arbitration Agreement (the "Agreement"):

## 1. CONFIDENTIALITY.

**1.1 Nondisclosure; Recognition of the Company's Rights.** At all times during and after my employment, I will hold in confidence and will not disclose any of the Company's Confidential Information (defined below). I will only use Confidential Information as may be required in connection with my work for the Company, or as the Chief Executive Officer (the "CEO") of the Company or other duly authorized officer at the level of Vice President or above expressly authorizes in writing. I will obtain that officer's written approval before publishing or submitting for publication any material (written, oral or otherwise) that relates to my work at the Company and incorporates any Confidential Information. I agree that I obtain no title to any Confidential Information, and recognize that all Confidential Information is the sole and exclusive property of the Company. I understand that nothing in this Agreement is intended to limit my rights, or other Company employees' rights, to discuss employment terms, wages, and working conditions to the extent such rights are protected by applicable law.

**1.2 Confidential Information.** "Confidential Information" means any and all non-public knowledge, data or information related to the Company's business or its actual or planned research or development, including (a) trade secrets, inventions, ideas, processes, computer source and object code, data, formulae, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques; (b) information regarding products, plans for research and development, marketing and business plans, budgets, financial statements, contracts, prices, suppliers and customers; (c) information regarding the skills and compensation of the Company's employees, contractors and any other Company service providers, to the extent the Company has a duty to maintain such information as private (this provision does not prevent any employee from sharing their own personnel information, or authorizing disclosure of their own personnel information by others, including for purposes of concerted activity under Section 7 of the National Labor Relations Act); and (d) the existence or content of any business discussions, negotiations or agreements between the Company and any third party; provided, however, Confidential Information does not include any of the foregoing items to the extent the same have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

**1.3 Third Party Information.** I understand the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information

and to use it only for certain limited purposes. During and after the term of my employment I will hold Third Party Information in strict confidence and will not disclose to anyone (other than the Company personnel who need to know such information in connection with their work for the Company) or use Third Party Information except in connection with my work for the Company, or unless authorized by a duly authorized Company officer at the level of Vice President or above, in writing.

**1.4 No Improper Use of Information of Prior Employers and Others.** I represent that my employment by the Company does not and will not breach any agreement with any of my former employers, including any non- compete agreement or any agreement to keep in confidence information I acquired prior to joining the Company. I further represent that I have not entered into, and will not enter into, any written or oral agreement in conflict with my obligations under this Agreement. During my employment by the Company, I will not improperly use or disclose any confidential information or trade secrets of any former employer or other third party to whom I have an obligation of confidentiality, and I will not bring onto the Company's premises or use any unpublished documents or any property belonging to any former employer or other third party to whom I have an obligation of confidentiality, unless that former employer or person has expressly consented to that disclosure in writing. In the performance of my duties, I will use only information that is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or legally in the public domain, or is otherwise provided or developed by the Company.

**1.5 Exceptions.** Federal law provides certain protections to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances. Specifically, federal law provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret under either of the following conditions:

- Where the disclosure is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or

- Where the disclosure is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. *See* 18 U.S.C. § 1833(b)(1)).

Federal law also provides that an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order. *See* 18 U.S.C. § 1833(b)(2).

**2. PERMITTED DISCLOSURES AND ACTIONS.** To the fullest extent that the following disclosure or actions are permitted under then-applicable law, I understand and agree that nothing in this Agreement shall prohibit or restrict me from (a) initiating communications directly with, cooperating with, providing relevant information to or otherwise cooperating or assisting in an investigation by the U.S. Securities and Exchange Commission, the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, or any other governmental or regulatory body or official(s) or self-regulatory organization (collectively "Government Agency or Agencies") regarding a possible violation of any applicable law, rule or regulation or making disclosures that are protected under whistleblower provisions of applicable law(s); (b) responding to any inquiry from any such Government Agency or Agencies, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; or (c) testifying, participating or otherwise assisting in any action or proceeding relating to a possible violation of a law, rule or regulation. Moreover, nothing herein precludes me from disclosing or discussing wages or other terms and

conditions of employment, or otherwise exercising my Section 7 rights under the National Labor Relations Act. Further, nothing in this Agreement requires me to notify the Company of any such communications, participation, cooperation, assistance, responses to inquiries, testimony or participation as described in this section.

In making any such disclosures or communications, I understand that I must take all reasonable precautions to prevent any use or disclosure of information that may constitute Company Confidential Information to any parties other than the Government Agency or Agencies. I further understand that I am not permitted to disclose any Company attorney-client privileged communications.

## 3. INVENTIONS.

**3.1 Inventions and Intellectual Property Rights. "Invention"** means any ideas, concepts, information, materials, processes, data, programs, know-how, negative know-how, improvements, discoveries, developments, designs, artwork, formulae, copyrightable works or works of authorship, and techniques and all Intellectual Property Rights in any of such items. "Intellectual Property Rights" means all trade secrets, copyrights, trademarks, mask work rights, patents and other intellectual property rights recognized by the laws of any jurisdiction or country.

**3.2 Prior Inventions.** I have disclosed on Exhibit A all Inventions (a) I have, or I have caused to be, alone or jointly with others, conceived, developed or reduced to practice prior to beginning my employment with the Company, (b) in which I have an ownership interest or that I have a license to use, and (c) that I wish to exclude from this Agreement (collectively, "Prior Inventions"). If I have listed no Prior Inventions in Exhibit A, I warrant I have no such Prior Inventions. I agree I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions (defined below) without the Company's prior written consent. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company process, machine or other work, I hereby grant the Company a non-exclusive, perpetual, fully-paid and royalty-free, irrevocable and worldwide license, with rights to sublicense through multiple levels of sublicensees, to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in, such Prior Invention, all without need to account to me in any way for such uses.

**3.3 Assignment of the Company Inventions.** "Company Inventions" are Inventions assigned to the Company or to a third party as directed by the Company. I hereby assign (when any such Inventions or Intellectual Property Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) I make, conceive, reduce to practice or learn, either alone or with others, during the period of my employment by the Company, or with the use of Company equipment, supplies, facilities, or Confidential Information, except for Inventions I have listed on Exhibit A, and except for Inventions I can prove qualify fully under the provisions of a Specific Inventions Law (as defined below). Though the Company may ask me to sign specific assignments after the date of this Agreement, the assignment in this Agreement will be automatically effective with respect to any future Inventions referenced without need for further documentation. I agree, as the Company directs, to assign all my right, title, and interest in and to any particular Company Invention to a third party, including without limitation the United States. I agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," as the term is defined in the United States Copyright Act.

**3.4 Specific Inventions Law.** I recognize that, in the event of a specifically applicable state law, regulation, rule or public policy ("Specific Inventions Law"), this Agreement will not be deemed to require assignment of any invention which qualifies fully for protection under such Specific Inventions Law by virtue of the fact that any such invention was, for example, developed entirely on my own time without using the Company's equipment, supplies, facilities, or trade secrets and neither related to the Company's actual or anticipated business, research or development, nor resulted from work performed by me for the Company. California Labor Code Section 2870 (attached as Exhibit B) lawfully prohibits the assignment of these rights.

**3.5 Obligation to Keep the Company Informed.** While employed with the Company and for one (1) year after my employment ends, I will promptly and fully disclose to the Company in writing (a) all Inventions I author, conceive or reduce to practice, either alone or with others and including any that might be covered under California Labor Code Section 2870, and (b) all patent applications I file or in which I am named as an inventor or co- inventor.

**3.6 Enforcement of Intellectual Property Rights and Assistance.** During and after the period of my employment, I will assist the Company in every proper way to obtain and enforce United States and foreign Intellectual Property Rights relating to the Company Inventions. If the Company cannot secure my signature on any document needed in connection with such purposes, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, which appointment is coupled with an interest, to act on my behalf to execute and file any such documents and to do all other lawfully permitted acts to further such purposes with the same legal force and effect as if I executed them myself.

**3.7 Incorporation of Software Code.** I agree I will not incorporate into any Company software or otherwise deliver to the Company any software code licensed under the GNU GPL or LGPL or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, licensing or distribution of any source code the Company owns or licenses.

**3.8 Waiver of Moral Rights.** If I have any moral rights or other similar rights in any Company Inventions that I cannot assign to the Company, I hereby agree to waive all enforcement of such moral rights against the Company or any of its successors or assigns.

**4. RECORDS** I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form the Company requires) of all Inventions I make during my employment by the Company. I will make such records available to, and acknowledge they remain the sole property of, the Company at all times.

**5. NON-SOLICITATION.** I agree that (a) during my employment by the Company, I will not, without the Company's express written consent, engage in any employment or business activity that competes with, or would otherwise conflict with, my employment by the Company, and (b) during my employment by the Company and for one (l) year thereafter, I will not directly or indirectly solicit or attempt to solicit or recruit any employee, independent contractor or consultant of the Company to terminate a relationship with the Company in order to become an employee, consultant or independent contractor to or for any other person or entity.

**6. RETURN OF THE COMPANY PROPERTY.** Upon termination of my employment or upon the Company's request at any other time, I will deliver to the Company all originals and copies of the Company's property, equipment and documents, and any other material containing or disclosing any Inventions, Third Party Information or Confidential Information. I further will certify in writing that I have fully complied with the foregoing obligation. I agree I will not copy, delete or alter any information

contained upon my Company computer or Company equipment before I return it to the Company. In addition, if I have used any personal computer, server or e-mail system to receive, store, review, prepare or transmit any Confidential Information, I agree to provide the Company with a computer-useable copy of all such Confidential Information and then permanently delete such Confidential Information from those systems. In addition, I agree to provide the Company such access to my personal systems as the Company reasonably requests to verify that the necessary copying or deletion has been completed. I further agree that any property situated on the Company's premises and owned by the Company is subject to inspection by the Company's personnel at any time with or without notice. Prior to the termination of my employment or shortly after termination of my employment, I will cooperate with the Company in attending an exit interview and certify in writing that I have complied with the requirements of this section.

**7. NOTIFICATION OF NEW EMPLOYER.** If I leave the Company's employ, I consent to the notification of my new employer of my rights and obligations under this Agreement, by the Company's providing a copy of this Agreement or otherwise.

**8. NO EXPECTATION OF PRIVACY IN ELECTRONIC RESOURCES OR WORKSPACES.** I acknowledge I have no personal privacy rights with respect to the Company's electronic resources, which include but are not limited to all networking, computing, telephonic and other electronic systems to which I have access during my employment, nor do I have any personal privacy rights in any workspace within the Company's facilities. Accordingly, I understand the Company can access, monitor or search any such electronic resource or workspace at any time, with or without notice and with or without my consent.

**9. MUTUAL AGREEMENT TO ARBITRATE.**

**9.1 Arbitration. IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES, AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, THE COMPANY AND I AGREE TO ARBITRATE BEFORE A NEUTRAL ARBITRATOR ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES BETWEEN US (INCLUDING CLAIMS INVOLVING ANY CURRENT OR FORMER EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER, OR AGENT OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, UNDER THE FEDERAL ARBITRATION ACT ("FAA") AND ANY OTHER ARBITRATION PROVISIONS SET FORTH IN GOVERNING LAW (AS DEFINED IN SECTION 9.1 OF THIS AGREEMENT).** FOR THE AVOIDANCE OF DOUBT, THE FAA SHALL CONTINUE TO APPLY WITH FULL FORCE AND EFFECT NOTWITHSTANDING THE APPLICATION OF PROCEDURAL RULES SET FORTH IN GOVERNING LAW.

DISPUTES THAT WE AGREE TO ARBITRATE, AND FOR WHICH WE THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY AND ALL EXISTING OR FUTURE DISPUTES OR CLAIMS ARISING OUT OF OR RELATING TO MY RECRUITMENT, EMPLOYMENT OR SEPARATION FROM EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS WHETHER THEY ARISE UNDER COMMON LAW, OR IN TORT, CONTRACT, OR PURSUANT TO A STATUTE, REGULATION, OR ORDINANCE NOW IN EXISTENCE OR WHICH MAY IN THE FUTURE BE ENACTED OR RECOGNIZED:

- CLAIMS FOR FRAUD, PROMISSORY ESTOPPEL, FRAUDULENT INDUCEMENT OF CONTRACT OR BREACH OF CONTRACT OR CONTRACTUAL

OBLIGATION, WHETHER SUCH ALLEGED CONTRACT OR OBLIGATION BE ORAL, WRITTEN, OR EXPRESS OR IMPLIED BY FACT OR LAW;

- CLAIMS FOR WRONGFUL TERMINATION OF EMPLOYMENT, VIOLATION OF PUBLIC POLICY AND CONSTRUCTIVE DISCHARGE, INFLICTION OF EMOTIONAL DISTRESS, MISREPRESENTATION, INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE, DEFAMATION, UNFAIR BUSINESS PRACTICES, TRADE SECRETS, CLAIMS ARISING UNDER THE UNIFORM TRADE SECRETS ACT, AND ANY TORT OR TORT-LIKE OR THE FORMATION OR TERMINATION THEREOF;

- CLAIMS OF HARASSMENT, DISCRIMINATION, OR RETALIATION, WHETHER ON THE BASIS OF AGE, SEX, RACE, NATIONAL ORIGIN, RELIGION, DISABILITY OR ANY OTHER UNLAWFUL BASIS, UNDER ANY AND ALL FEDERAL, STATE, OR MUNICIPAL STATUTES, REGULATIONS, ORDINANCES OR COMMON LAW, INCLUDING BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, SECTION 1981 OF THE CIVIL RIGHTS ACT, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE REHABILITATION ACT OF 1973, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE EQUAL PAY ACT OF 1963, THE FAMILY AND MEDICAL LEAVE ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, AND THE CALIFORNIA FAMILY RIGHTS ACT;

- CLAIMS FOR NON-PAYMENT OR INCORRECT PAYMENT OF WAGES, COMMISSIONS, BONUSES, SEVERANCE, AND EMPLOYEE FRINGE BENEFITS, STOCK OPTIONS AND THE LIKE, WHETHER SUCH CLAIMS BE PURSUANT TO ALLEGED EXPRESS OR IMPLIED CONTRACT OR OBLIGATION, EQUITY, AND ANY FEDERAL, STATE, OR MUNICIPAL LAWS CONCERNING WAGES, COMPENSATION OR EMPLOYEE BENEFITS, CLAIMS OF FAILURE TO PAY WAGES FOR ALL HOURS WORKED, FAILURE TO PAY OVERTIME, FAILURE TO PAY WAGES DUE ON TERMINATION, FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS, ENTITLEMENT TO WAITING TIME PENALTIES, CLAIMS RELATING TO EMPLOYMENT STATUS, CLASSIFICATION AND RELATIONSHIP WITH THE COMPANY AND/OR ANY OTHER CLAIMS INVOLVING EMPLOYEE COMPENSATION ISSUES, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, THE FAIR LABOR STANDARDS ACT AND THE CALIFORNIA LABOR CODE.

- WE ALSO AGREE TO ARBITRATE ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE, BUT NOT DISPUTES ABOUT THE ENFORCEABILITY,REVOCABILITY OR VALIDITY OF THIS AGREEMENT TO ARBITRATE OR ANY PORTION HEREOF OR THE CLASS, COLLECTIVE AND REPRESENTATIVE PROCEEDING WAIVER HEREIN. WITH RESPECT TO ALL SUCH CLAIMS AND DISPUTES THAT WE AGREE TO ARBITRATE, WE HEREBY EXPRESSLY AGREE TO WAIVE, AND DO WAIVE, ANY RIGHT TO A TRIAL BY JURY.

**9.2 Class Action Waiver. WE EXPRESSLY INTEND AND AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, (1) CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION PROCEDURES SHALL NOT BE INVOKED, NOR WILL**

THEY APPLY, IN ANY ARBITRATION PURSUANT TO THIS AGREEMENT; (2) I WILL NOT ASSERT CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION CLAIMS AGAINST THE COMPANY IN ARBITRATION OR ANY OTHER FORUM; AND (3) I SHALL ONLY SUBMIT MY OWN INDIVIDUAL CLAIMS IN ARBITRATION AND WILL NOT SEEK TO REPRESENT THE INTERESTS OF ANY OTHER PERSON. NOTWITHSTANDING THE FOREGOING, I UNDERSTAND THAT I MAY BRING A PROCEEDING AS A PRIVATE ATTORNEY GENERAL AS PERMITTED BY LAW AND THAT NOTHING IN THIS AGREEMENT CONSTITUTES A WAIVER OF MY RIGHTS UNDER SECTION 7 OF THE NATIONAL LABOR RELATIONS ACT. WE FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

ANY ISSUE CONCERNING THE VALIDITY OF THIS CLASS ACTION, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER, AND WHETHER AN ACTION MAY PROCEED AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MUST BE DECIDED BY A COURT AND AN ARBITRATOR SHALL NOT HAVE AUTHORITY TO CONSIDER THE ISSUE OF THE VALIDITY OF THIS WAIVER OR WHETHER THE ACTION MAY PROCEED AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION. IF FOR ANY REASON THIS CLASS, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER IS FOUND TO BE UNENFORCEABLE, THE CLASS, COLLECTIVE OR REPRESENTATIVE CLAIM MAY ONLY BE HEARD IN COURT AND MAY NOT BE ARBITRATED. NO ARBITRATION AWARD OR DECISION WILL HAVE ANY PRECLUSIVE EFFECT AS TO ISSUES OR CLAIMS IN ANY DISPUTE WITH ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

**9.3 Procedure.** WE AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"), WHICH ARE AVAILABLE AT AT http://www.jamsadr.com/rules-employment-arbitration/ AND A PRINTED COPY IS AVAILABLE FROM HUMAN RESOURCES OR LEGAL. WE AGREE THAT THOSE RULES SHALL NOT BE CONSTRUED TO ALLOW CLASS ACTION ARBITRATION AND THAT A COURT, RATHER THAN THE ARBITRATOR, SHALL DECIDE CLASS-RELATED ISSUES. WE AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, AND MOTIONS TO DISMISS AND DEMURRERS, APPLYING THE STANDARDS SET FORTH IN GOVERNING LAW OF THIS AGREEMENT. WE AGREE THAT THE ARBITRATOR SHALL ISSUE A WRITTEN DECISION ON THE MERITS. WE ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER GOVERNING LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, WHERE PROVIDED BY APPLICABLE LAW. WE AGREE THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. WE AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH GOVERNING LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH GOVERNING LAW, GOVERNING LAW SHALL TAKE PRECEDENCE. WE AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SAN FRANCISCO COUNTY, CALIFORNIA, UNLESS I CHOOSE TO HAVE THE ARBITRATION IN THE COUNTY WHERE I PRIMARILY WORKED FOR THE COMPANY

AT THE TIME WHEN THE DISPUTE FIRST AROSE.

**9.4 Venue.** EXCEPT AS MANDATED BY GOVERNING LAW OR THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL VENUE FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY GOVERNING LAW AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE OR PARTICIPATE IN COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

**9.5 Claims Not Covered By Agreement.** WE UNDERSTAND AND AGREE THAT THIS AGREEMENT DOES NOT COVER THE FOLLOWING DISPUTES AND CLAIMS WHICH SHALL THEREFORE BE RESOLVED IN ANY APPROPRIATE FORUM AS REQUIRED BY THE LAWS IN EFFECT: CLAIMS FOR WORKERS' COMPENSATION BENEFITS, UNEMPLOYMENT INSURANCE, OR STATE OR FEDERAL DISABILITY INSURANCE; CLAIMS FOR TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF (INCLUDING A TEMPORARY RESTRAINING ORDER) IN AID OF ARBITRATION OR TO MAINTAIN THE STATUS QUO PENDING ARBITRATION, IN A COURT OF COMPETENT JURISDICTION IN ACCORDANCE WITH APPLICABLE LAW; OR ANY OTHER DISPUTE OR CLAIM THAT HAS BEEN EXPRESSLY EXCLUDED FROM ARBITRATION BY STATUTE. NOTHING IN THIS AGREEMENT SHOULD BE INTERPRETED AS RESTRICTING OR PROHIBITING ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE, OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY THAT IS AUTHORIZED TO ENFORCE OR ADMINISTER LAWS RELATED TO EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, THE DEPARTMENT OF LABOR, OR THE OCCUPATIONAL SAFETY AND HEALTH COMMISSION (EXCEPT THAT WE ACKNOWLEDGE THAT I MAY NOT RECOVER ANY MONETARY BENEFITS IN CONNECTION WITH ANY SUCH CLAIM, CHARGE OR PROCEEDING). A FEDERAL, STATE, OR LOCAL AGENCY WOULD ALSO BE ENTITLED TO INVESTIGATE THE CHARGE IN ACCORDANCE WITH APPLICABLE LAW. HOWEVER, ANY DISPUTE OR CLAIM THAT IS COVERED BY THIS AGREEMENT BUT NOT RESOLVED THROUGH THE FEDERAL, STATE, OR LOCAL AGENCY PROCEEDINGS MUST BE SUBMITTED TO ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT.

**9.6 Voluntary Nature of Agreement.** I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE TEXT OF CALIFORNIA LABOR CODE SECTION 2870 IN EXHIBIT B. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL OR HEARING BEFORE A JUDGE.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

**10.GENERAL PROVISIONS.**

**10.1 Governing Law; Venue under Certain Circumstances.** This Agreement and any dispute related hereto will be governed and interpreted by and under the laws of the State of California ("Governing Law"), unless I opt to arbitrate a dispute in the county where I primarily worked for the Company at the time the dispute first arose, in which case the law of the state where that county is located shall govern. If the arbitration provision in this Agreement is not enforced for any reason or it is necessary to seek an order from a court

to enforce arbitration or preserve the status quo via an injunction, I consent, with the understanding that the Company also consents in such circumstances, to the personal jurisdiction and venue in the state and federal courts for the county where the Company's principal place of business is located.

**10.2 Severability.** If any provision of this Agreement is held to be invalid or unenforceable for any reason, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

**10.3 Survival.** This Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor or other assignee, and shall be binding upon my heirs and legal representatives.

**10.4 At-will Employment.** I understand my employment with the Company is for an indefinite term and is "at-will." Accordingly, I understand and agree that either I or the Company may terminate this employment relationship at any time, with or without cause, and with or without notice. I understand this "at-will" relationship may be changed only by a written agreement entered into specifically for that purpose and signed by the Company's Chief Executive Officer and General Counsel. I also understand that my employment will be governed by the Company's various policies and programs, in writing and otherwise, that the Company may change those policies and programs from time to time in its discretion, and that no such policy or program modifications will change the voluntary "at-will" nature of my employment in any way.

**10.5 Notices.** Each party must deliver all notices or other communications required or permitted under this Agreement in writing to the other party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested) or by a nationally-recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each party may change its address for receipt of notice by giving notice of the change to the other party.

**10.6 Injunctive Relief.** I acknowledge that because my services are personal and unique and because I will have access to the Confidential Information of the Company, my breach of this Agreement would cause irreparable injury to the Company for which monetary damages would not be an adequate remedy and, therefore, will entitle the Company to injunctive relief (including specific performance). The rights and remedies provided to each party in this Agreement are cumulative and in addition to any other rights and remedies available to such party at law or in equity.

**10.7 Export.** I agree not to export, directly or indirectly, any U.S. technical data acquired from the Company or any products utilizing such data, to countries outside the United States, because such export could be in violation of the United States export laws or regulations.

**10.8 Entire Agreement.** If no other agreement governs nondisclosure and assignment of inventions during any period in which I am employed or am in the future retained by the Company as an independent contractor, the obligations pursuant to sections of this Agreement titled "Confidentiality" and "Inventions" shall apply to such period. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of that provision or any other provision on any other occasion. This Agreement is

the final, complete and exclusive agreement of the parties with respect to the subject matters hereof and supersedes and merges all prior communications between us with respect to such matters. No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by me and the CEO of the Company. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

This Agreement shall be effective as of the first day of my employment with the Company.

**EMPLOYEE**

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT AND HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS IT WITH INDEPENDENT LEGAL COUNSEL.

☑ Signature
Hunter Green 4/2/2018 6:48 PM
Checking the checkbox above is equivalent to a handwritten signature.

Title:
Retail Solar Adviser

Address 1:
2232 6th St

Address 2:

| City: | State: | Zip: |
|---|---|---|
| Berkeley | CA | 94710 |

**SUNRUN INC. ACCEPTED AND AGREED:**

_(Signature)_

By:
Chad Herring

Title:
VP, Human Resources

Date:
8/10/2018

Address:
595 Market Street, Floor 29
San Francisco, CA 94105

**EXHIBIT A**
**INVENTIONS**

**1. Prior Inventions Disclosure.** The following is a complete list of all my Prior Inventions:

☑ None

☐ See immediately below:

**2. Limited Exclusion Notification.**

**THIS IS TO NOTIFY** you in accordance with Section 2872 of the California Labor Code that the foregoing Agreement between you and the Company does not require you to assign or offer to assign to the Company any Invention that you develop entirely on your own time without using the Company's equipment, supplies, facilities or trade secret information, except for those Inventions that either:

**a.** Relate at the time of conception or reduction to practice to the Company's business, or actual or demonstrably anticipated research or development; or

**b** . Result from any work performed by you for the Company.

To the extent a provision in the foregoing Agreement purports to require you to assign an Invention otherwise excluded from the preceding paragraph, the provision is against the public policy of this state and is unenforceable.

This limited exclusion does not apply to any patent or Invention covered by a contract between the Company and the United States or any of its agencies requiring full title to such patent or Invention to be in the United States. Similar exclusions may apply under the laws of other states.

---

**EXHIBIT B**
**CALIFORNIA LABOR CODE SECTION 2870**

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

EXHIBIT C

| From: | Smith, Philip |
|---|---|
| To: | Gervy Jhon Tesoro |
| Cc: | Jose Marin; Travers, Sue |
| Subject: | RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD) |
| Date: | Tuesday, June 1, 2021 10:38:00 AM |
| Attachments: | 2021-06-13 Ltr. to OPC w signed arbitration agreement(40535974.1).pdf |
|  | Costco Waiver of Service of Summons 5-3-21.pdf |

Hi Gervy Jhon,

I had a good weekend, I hope you did too. I've attached Costco's signed waiver of the service of summons.

I had previously sent the attached demand for arbitration. Can you please let me know if Ms. Hunter Green will stipulate to arbitrate her claims? I'm also available this week to discuss further if you have any questions.

Thank you,

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Sent:** Tuesday, June 1, 2021 9:50 AM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Jose Marin <Jose@josemarinlaw.com>; Travers, Sue <stravers@fisherphillips.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Hi Philip:

Hope you had a restful three-day weekend. We are in receipt of the Waiver of the Service of Summons on behalf of Sunrun, but not Costco Wholesale Corporation ("Costco"). Based on the May 13, 2021 correspondence discussing the arbitration agreement you indicated you represent both named defendants. Could you kindly send the waiver of service on behalf of Costco.

Thank you in advance,

Gervy Jhon Tesoro Esq.
TESORO LAW

NOTICE: The information contained in this e-mail message and any attachments are confidential and may be legally privileged. This message is intended only for the individual(s) named herein or other contacts of TESORO LAW specifically authorized to receive this communication. If you are not the intended recipient, please notify the sender and delete the message immediately. Please do not store, copy or otherwise disseminate or distribute this e-mail or any part of it.

On Fri, Apr 30, 2021 at 11:42 AM Jose Marin <jose@josemarinlaw.com> wrote:

---------- Forwarded message ---------
From: **Smith, Philip** <psmith@fisherphillips.com>
Date: Fri, Apr 30, 2021 at 11:37 AM
Subject: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)
To: jose@josemarinlaw.com <jose@josemarinlaw.com>
Cc: Travers, Sue <stravers@fisherphillips.com>

Counsel,

This follows my attempt to reach you by telephone earlier today. Please be advised that Fisher & Phillips LLP has been retained to represent Sunrun Inc. ("Sunrun") in connection with the above-referenced matter. I've also attached our signed Waiver of the Service of Summons on behalf of Sunrun.

Please let me know if you are available to discuss this matter next week.

Thank you,

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*<sup>SM</sup>

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

--

photo

**Jose Z. Marin, Esq.**
Jose Marin Law

(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

--
Gervy Jhon Tesoro Esq.
TESORO LAW

NOTICE: The information contained in this e-mail message and any attachments are confidential and may be legally privileged. This message is intended only for the individual(s) named herein or other contacts of TESORO LAW specifically authorized to receive this communication. If you are not the intended recipient, please notify the sender and delete the message immediately. Please do not store, copy or otherwise disseminate or distribute this e-mail or any part of it.

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| Mary Hunter Green | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   5:21-cv-02387-VKD |
| Costco Wholesale Corporation et al. | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To:  Jose Z. Marin Esq., Gervy Jhon Tesoro Esq.
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from   5-03-21  , the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: 5-03-21

Costco Wholesale Corporation
*Printed name of party waiving service of summons*

*Signature of the attorney or unrepresented party*
Mark P. Grajski, Geoffrey C. Westbrook

Jeffrey A. Nordlander *Printed name*
Seyfarth Shaw LLP
400 Capitol Mall, Suite 2350, Sacramento, CA 95814

mgrajski@seyfarth.com *Address*
gwestbrook@seyfarth.com; jnordlander@seyfarth.com
*E-mail address*
(916) 448-0159
*Telephone number*

---

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 400 Capitol Mall, Suite 2350, Sacramento, California 95814-4428. On May 3, 2021, I served the within document(s):

**Waiver of the Service of Summons**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at 400 Capitol Mall, Suite 2350, Sacramento, California addressed as set forth below.

☐ by causing the document(s) listed above to be personally delivered to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Sacramento, California, addressed as set forth below.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

Jose Z. Marin                                      *Attorneys for Plaintiff*
Jose Marin Law
Gervy Jhon Tesoro                       Telephone:    (415) 753-3539
Tesoro Law                               jose@josemarinlaw.com
2537 Irving Street
San Francisco, CA 94122

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on May 3, 2021, at Sacramento, California.

_Linda Ninelist_
_____
Linda Ninelist

70236030v.1



fisherphillips.com

**San Francisco**
One Embarcadero Center
Suite 2050
San Francisco, CA 94111

(415) 490-9000 Tel
(415) 490-9001 Fax

**Writer's Direct Dial:**
(415) 490-9027

**Writer's E-mail:**
psmith@fisherphillips.com

May 13, 2021

_VIA EMAIL_

Jose Z. Marin, Esq.
Jose Marin Law
Gervy Jhon Tesoro, Esq.
Tesoro Law
2537 Irving Street
San Francisco, California 94122

> Re: *Mary Hunter Green v. Sunrun Inc., et al. (United States District Court, Northern District of California, Case No. 5:21-cv-02387)*

Dear Counsel:

Per our prior correspondence, Fisher & Phillips LLP has been retained to represent Defendants Sunrun Inc. ("Sunrun") and Costco Wholesale Corporation ("Costco") (Sunrun and Costco will collectively be referred to as "Defendants"). I am writing to request that Plaintiff Mary Hunter Green stipulate to arbitrate her claims against Defendants, and dismiss or stay her civil lawsuit, because she executed a valid and enforceable written arbitration agreement covering every cause of action asserted in her Complaint against Defendants. Please accept this letter as my clients' effort to meet and confer on this issue pursuant to California *Code of Civil Procedure* section 1281.2.

Ms. Hunter Green executed an agreement to arbitrate any claims arising out of, or relating to, her employment with Sunrun on April 2, 2018, a copy of which is attached as **Exhibit A**. (Attachments A is referred to hereafter as the "Arbitration Agreement").

The Arbitration Agreement requires Plaintiff to use arbitration to resolve "ANY AND ALL CONTROVERSIES, CLAIMS OR DISPUTES [...] ARISING OUT OF, OR RELATING TO, OR RESULTING FROM [HER] EMPLOYMENT [...] OR THE TERMINATION OF [HER] EMPLOYMENT [INCLUDING] CLAIMS FOR WRONGFUL TERMINATION OF EMPLOYMENT, VIOLATION OF PUBLIC POLICY[,] INFLICTION OF EMOTIONAL DISTRESS [,] UNFAIR BUSINESS PRACTICES [,] CLAIMS OF HARASSMENT, DISCRIMINATION OR RETALIATION [,] UNDER ANY AND ALL FEDERAL, STATE AND MUNICIPAL STATUTES, REGULATIONS, ORDINANCES, OR COMMON LAW[,] CLAIMS FOR NON-PAYMENT, OR INCORRECT PAYMENT OF WAGES[,] AND ANY FEDERAL, STATE, OR MUNICIPAL LAWS CONCERNING WAGES[,] CLAIMS OF FAILURE TO PAY WAGES DUE ON TERMINATION, FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS, ENTITLEMENT TO WAITING TIME PENALTIES[,] OTHER CLAIMS INVOLVING EMPLOYEE COMPENSATION ISSUES,

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Fort Lauderdale • Gulfport • Houston
Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

Jose Z. Marin, Esq.
Gervy Jhon Tesoro, Esq.
May 13, 2021
Page 2

INLCUDING BUT NOT LIMITED TO CLAIMS UNDER […] THE CALIFORNIA LABOR CODE."

Here, Plaintiff's Complaint against Sunrun and Costco alleges causes of action predicated solely upon her employment with Sunrun and Costco: (1) discrimination on the basis of physical disability; (2) discrimination on the basis of sex; (3) discrimination on the basis of age; (4) discrimination on the basis of opposition to forbidden practices; (5) failure to take all reasonable steps necessary to prevent discrimination and harassment from occurring; (6) failure to engage in a timely, good faith interactive process; (7) failure to provide reasonable accommodation; (8) creating a hostile work environment; (9) failure to provide timely meal periods; (10) failure to pay state premium wages; (11) failure to pay minimum and regular wages; (12) failure to pay all wages due upon termination; (13) failure to provide personnel records; (14) failure to provide all signed instruments in relation to employment; (15) failure to indemnify; (16) wrongful termination in violation of public policy; (17) intentional infliction of emotional distress; and (18) unfair and unlawful acts in violation of unfair competition law (collectively, Plaintiff's "Claims").

It indisputably follows that Plaintiff's Claims against Defendants are alleged to have arisen out of her employment with Sunrun and Costco and are thus subject to arbitration under the terms of the Arbitration Agreement.

Plaintiff's Arbitration Agreement also satisfies the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83. Specifically, the Arbitration Agreement: 1) provides for a neutral arbitrator; 2) does not restrict Plaintiff's remedies; 3) permits sufficient discovery; and 4) will allow the arbitrator to provide a written reasoned opinion. Finally, Sunrun will pay for the costs of arbitration, as set forth in the Arbitration Agreement and under applicable law.

We are hopeful that Plaintiff will abide by the terms of her Arbitration Agreement and that you will recognize the enforceability of the Arbitration Agreement. Please advise us in writing as to Plaintiff's intentions and whether she will agree to stipulate to arbitration no later than Friday, May 21, 2021 at 5:00 p.m.

Should you wish to discuss this issue further, please do not hesitate to contact me.

Very truly yours,

*Philip Smith*

Philip Smith
For FISHER & PHILLIPS LLP

PS:ts
Enclosures

FP 40494793.1

# EXHIBIT A



### SUNRUN INC.
## EMPLOYEE CONFIDENTIALITY, INVENTIONS ASSIGNMENT AND ARBITRATION AGREEMENT (CALIFORNIA)

In consideration of my employment or continued employment by Sunrun Inc., including its subsidiaries and affiliates (collectively the "Company") and benefits thereof (including access and receipt of the Company's trade secrets, Confidential Information, goodwill, and training), and the compensation the Company may pay to me now and during my employment, I agree to the terms of this Employee Confidentiality, Inventions Assignment and Arbitration Agreement (the "Agreement"):

## 1. CONFIDENTIALITY.

**1.1 Nondisclosure; Recognition of the Company's Rights.** At all times during and after my employment, I will hold in confidence and will not disclose any of the Company's Confidential Information (defined below). I will only use Confidential Information as may be required in connection with my work for the Company, or as the Chief Executive Officer (the "CEO") of the Company or other duly authorized officer at the level of Vice President or above expressly authorizes in writing. I will obtain that officer's written approval before publishing or submitting for publication any material (written, oral or otherwise) that relates to my work at the Company and incorporates any Confidential Information. I agree that I obtain no title to any Confidential Information, and recognize that all Confidential Information is the sole and exclusive property of the Company. I understand that nothing in this Agreement is intended to limit my rights, or other Company employees' rights, to discuss employment terms, wages, and working conditions to the extent such rights are protected by applicable law.

**1.2 Confidential Information.** "Confidential Information" means any and all non-public knowledge, data or information related to the Company's business or its actual or planned research or development, including (a) trade secrets, inventions, ideas, processes, computer source and object code, data, formulae, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques; (b) information regarding products, plans for research and development, marketing and business plans, budgets, financial statements, contracts, prices, suppliers and customers; (c) information regarding the skills and compensation of the Company's employees, contractors and any other Company service providers, to the extent the Company has a duty to maintain such information as private (this provision does not prevent any employee from sharing their own personnel information, or authorizing disclosure of their own personnel information by others, including for purposes of concerted activity under Section 7 of the National Labor Relations Act); and (d) the existence or content of any business discussions, negotiations or agreements between the Company and any third party; provided, however, Confidential Information does not include any of the foregoing items to the extent the same have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

**1.3 Third Party Information.** I understand the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information

and to use it only for certain limited purposes. During and after the term of my employment I will hold Third Party Information in strict confidence and will not disclose to anyone (other than the Company personnel who need to know such information in connection with their work for the Company) or use Third Party Information except in connection with my work for the Company, or unless authorized by a duly authorized Company officer at the level of Vice President or above, in writing.

**1.4 No Improper Use of Information of Prior Employers and Others.** I represent that my employment by the Company does not and will not breach any agreement with any of my former employers, including any non- compete agreement or any agreement to keep in confidence information I acquired prior to joining the Company. I further represent that I have not entered into, and will not enter into, any written or oral agreement in conflict with my obligations under this Agreement. During my employment by the Company, I will not improperly use or disclose any confidential information or trade secrets of any former employer or other third party to whom I have an obligation of confidentiality, and I will not bring onto the Company's premises or use any unpublished documents or any property belonging to any former employer or other third party to whom I have an obligation of confidentiality, unless that former employer or person has expressly consented to that disclosure in writing. In the performance of my duties, I will use only information that is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or legally in the public domain, or is otherwise provided or developed by the Company.

**1.5 Exceptions.** Federal law provides certain protections to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances. Specifically, federal law provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret under either of the following conditions:

- Where the disclosure is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or

- Where the disclosure is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. *See* 18 U.S.C. § 1833(b)(1)).

Federal law also provides that an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order. *See* 18 U.S.C. § 1833(b)(2).

**2. PERMITTED DISCLOSURES AND ACTIONS.** To the fullest extent that the following disclosure or actions are permitted under then-applicable law, I understand and agree that nothing in this Agreement shall prohibit or restrict me from (a) initiating communications directly with, cooperating with, providing relevant information to or otherwise cooperating or assisting in an investigation by the U.S. Securities and Exchange Commission, the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, or any other governmental or regulatory body or official(s) or self-regulatory organization (collectively "Government Agency or Agencies") regarding a possible violation of any applicable law, rule or regulation or making disclosures that are protected under whistleblower provisions of applicable law(s); (b) responding to any inquiry from any such Government Agency or Agencies, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; or (c) testifying, participating or otherwise assisting in any action or proceeding relating to a possible violation of a law, rule or regulation. Moreover, nothing herein precludes me from disclosing or discussing wages or other terms and

conditions of employment, or otherwise exercising my Section 7 rights under the National Labor Relations Act. Further, nothing in this Agreement requires me to notify the Company of any such communications, participation, cooperation, assistance, responses to inquiries, testimony or participation as described in this section.

In making any such disclosures or communications, I understand that I must take all reasonable precautions to prevent any use or disclosure of information that may constitute Company Confidential Information to any parties other than the Government Agency or Agencies. I further understand that I am not permitted to disclose any Company attorney-client privileged communications.

## 3. INVENTIONS.

**3.1 Inventions and Intellectual Property Rights. "Invention"** means any ideas, concepts, information, materials, processes, data, programs, know-how, negative know-how, improvements, discoveries, developments, designs, artwork, formulae, copyrightable works or works of authorship, and techniques and all Intellectual Property Rights in any of such items. "Intellectual Property Rights" means all trade secrets, copyrights, trademarks, mask work rights, patents and other intellectual property rights recognized by the laws of any jurisdiction or country.

**3.2 Prior Inventions.** I have disclosed on Exhibit A all Inventions (a) I have, or I have caused to be, alone or jointly with others, conceived, developed or reduced to practice prior to beginning my employment with the Company, (b) in which I have an ownership interest or that I have a license to use, and (c) that I wish to exclude from this Agreement (collectively, "Prior Inventions"). If I have listed no Prior Inventions in Exhibit A, I warrant I have no such Prior Inventions. I agree I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions (defined below) without the Company's prior written consent. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company process, machine or other work, I hereby grant the Company a non-exclusive, perpetual, fully-paid and royalty-free, irrevocable and worldwide license, with rights to sublicense through multiple levels of sublicensees, to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in, such Prior Invention, all without need to account to me in any way for such uses.

**3.3 Assignment of the Company Inventions.** "Company Inventions" are Inventions assigned to the Company or to a third party as directed by the Company. I hereby assign (when any such Inventions or Intellectual Property Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) I make, conceive, reduce to practice or learn, either alone or with others, during the period of my employment by the Company, or with the use of Company equipment, supplies, facilities, or Confidential Information, except for Inventions I have listed on Exhibit A, and except for Inventions I can prove qualify fully under the provisions of a Specific Inventions Law (as defined below). Though the Company may ask me to sign specific assignments after the date of this Agreement, the assignment in this Agreement will be automatically effective with respect to any future Inventions referenced without need for further documentation. I agree, as the Company directs, to assign all my right, title, and interest in and to any particular Company Invention to a third party, including without limitation the United States. I agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," as the term is defined in the United States Copyright Act.

**3.4 Specific Inventions Law.** I recognize that, in the event of a specifically applicable state law, regulation, rule or public policy ("Specific Inventions Law"), this Agreement will not be deemed to require assignment of any invention which qualifies fully for protection under such Specific Inventions Law by virtue of the fact that any such invention was, for example, developed entirely on my own time without using the Company's equipment, supplies, facilities, or trade secrets and neither related to the Company's actual or anticipated business, research or development, nor resulted from work performed by me for the Company. California Labor Code Section 2870 (attached as Exhibit B) lawfully prohibits the assignment of these rights.

**3.5 Obligation to Keep the Company Informed.** While employed with the Company and for one (1) year after my employment ends, I will promptly and fully disclose to the Company in writing (a) all Inventions I author, conceive or reduce to practice, either alone or with others and including any that might be covered under California Labor Code Section 2870, and (b) all patent applications I file or in which I am named as an inventor or co- inventor.

**3.6 Enforcement of Intellectual Property Rights and Assistance.** During and after the period of my employment, I will assist the Company in every proper way to obtain and enforce United States and foreign Intellectual Property Rights relating to the Company Inventions. If the Company cannot secure my signature on any document needed in connection with such purposes, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, which appointment is coupled with an interest, to act on my behalf to execute and file any such documents and to do all other lawfully permitted acts to further such purposes with the same legal force and effect as if I executed them myself.

**3.7 Incorporation of Software Code.** I agree I will not incorporate into any Company software or otherwise deliver to the Company any software code licensed under the GNU GPL or LGPL or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, licensing or distribution of any source code the Company owns or licenses.

**3.8 Waiver of Moral Rights.** If I have any moral rights or other similar rights in any Company Inventions that I cannot assign to the Company, I hereby agree to waive all enforcement of such moral rights against the Company or any of its successors or assigns.

**4. RECORDS** I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form the Company requires) of all Inventions I make during my employment by the Company. I will make such records available to, and acknowledge they remain the sole property of, the Company at all times.

**5. NON-SOLICITATION.** I agree that (a) during my employment by the Company, I will not, without the Company's express written consent, engage in any employment or business activity that competes with, or would otherwise conflict with, my employment by the Company, and (b) during my employment by the Company and for one (l) year thereafter, I will not directly or indirectly solicit or attempt to solicit or recruit any employee, independent contractor or consultant of the Company to terminate a relationship with the Company in order to become an employee, consultant or independent contractor to or for any other person or entity.

**6. RETURN OF THE COMPANY PROPERTY.** Upon termination of my employment or upon the Company's request at any other time, I will deliver to the Company all originals and copies of the Company's property, equipment and documents, and any other material containing or disclosing any Inventions, Third Party Information or Confidential Information. I further will certify in writing that I have fully complied with the foregoing obligation. I agree I will not copy, delete or alter any information

contained upon my Company computer or Company equipment before I return it to the Company. In addition, if I have used any personal computer, server or e-mail system to receive, store, review, prepare or transmit any Confidential Information, I agree to provide the Company with a computer-useable copy of all such Confidential Information and then permanently delete such Confidential Information from those systems. In addition, I agree to provide the Company such access to my personal systems as the Company reasonably requests to verify that the necessary copying or deletion has been completed. I further agree that any property situated on the Company's premises and owned by the Company is subject to inspection by the Company's personnel at any time with or without notice. Prior to the termination of my employment or shortly after termination of my employment, I will cooperate with the Company in attending an exit interview and certify in writing that I have complied with the requirements of this section.

**7. NOTIFICATION OF NEW EMPLOYER.** If I leave the Company's employ, I consent to the notification of my new employer of my rights and obligations under this Agreement, by the Company's providing a copy of this Agreement or otherwise.

**8. NO EXPECTATION OF PRIVACY IN ELECTRONIC RESOURCES OR WORKSPACES.** I acknowledge I have no personal privacy rights with respect to the Company's electronic resources, which include but are not limited to all networking, computing, telephonic and other electronic systems to which I have access during my employment, nor do I have any personal privacy rights in any workspace within the Company's facilities. Accordingly, I understand the Company can access, monitor or search any such electronic resource or workspace at any time, with or without notice and with or without my consent.

**9. MUTUAL AGREEMENT TO ARBITRATE.**

**9.1 Arbitration. IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES, AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, THE COMPANY AND I AGREE TO ARBITRATE BEFORE A NEUTRAL ARBITRATOR ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES BETWEEN US (INCLUDING CLAIMS INVOLVING ANY CURRENT OR FORMER EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER, OR AGENT OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, UNDER THE FEDERAL ARBITRATION ACT ("FAA") AND ANY OTHER ARBITRATION PROVISIONS SET FORTH IN GOVERNING LAW (AS DEFINED IN SECTION 9.1 OF THIS AGREEMENT). FOR THE AVOIDANCE OF DOUBT, THE FAA SHALL CONTINUE TO APPLY WITH FULL FORCE AND EFFECT NOTWITHSTANDING THE APPLICATION OF PROCEDURAL RULES SET FORTH IN GOVERNING LAW.**

DISPUTES THAT WE AGREE TO ARBITRATE, AND FOR WHICH WE THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY AND ALL EXISTING OR FUTURE DISPUTES OR CLAIMS ARISING OUT OF OR RELATING TO MY RECRUITMENT, EMPLOYMENT OR SEPARATION FROM EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS WHETHER THEY ARISE UNDER COMMON LAW, OR IN TORT, CONTRACT, OR PURSUANT TO A STATUTE, REGULATION, OR ORDINANCE NOW IN EXISTENCE OR WHICH MAY IN THE FUTURE BE ENACTED OR RECOGNIZED:

- CLAIMS FOR FRAUD, PROMISSORYESTOPPEL, FRAUDULENT INDUCEMENT OF CONTRACT OR BREACH OF CONTRACT OR CONTRACTUAL

OBLIGATION, WHETHER SUCH ALLEGED CONTRACT OR OBLIGATION BE ORAL, WRITTEN, OR EXPRESS OR IMPLIED BY FACT OR LAW;

- CLAIMS FOR WRONGFUL TERMINATION OF EMPLOYMENT, VIOLATION OF PUBLIC POLICY AND CONSTRUCTIVE DISCHARGE, INFLICTION OF EMOTIONAL DISTRESS, MISREPRESENTATION, INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE, DEFAMATION, UNFAIR BUSINESS PRACTICES, TRADE SECRETS, CLAIMS ARISING UNDER THE UNIFORM TRADE SECRETS ACT, AND ANY TORT OR TORT-LIKE OR THE FORMATION OR TERMINATION THEREOF;

- CLAIMS OF HARASSMENT, DISCRIMINATION, OR RETALIATION, WHETHER ON THE BASIS OF AGE, SEX, RACE, NATIONAL ORIGIN, RELIGION, DISABILITY OR ANY OTHER UNLAWFUL BASIS, UNDER ANY AND ALL FEDERAL, STATE, OR MUNICIPAL STATUTES, REGULATIONS, ORDINANCES OR COMMON LAW, INCLUDING BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, SECTION 1981 OF THE CIVIL RIGHTS ACT, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE REHABILITATION ACT OF 1973, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE EQUAL PAY ACT OF 1963, THE FAMILY AND MEDICAL LEAVE ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, AND THE CALIFORNIA FAMILY RIGHTS ACT;

- CLAIMS FOR NON-PAYMENT OR INCORRECT PAYMENT OF WAGES, COMMISSIONS, BONUSES, SEVERANCE, AND EMPLOYEE FRINGE BENEFITS, STOCK OPTIONS AND THE LIKE, WHETHER SUCH CLAIMS BE PURSUANT TO ALLEGED EXPRESS OR IMPLIED CONTRACT OR OBLIGATION, EQUITY, AND ANY FEDERAL, STATE, OR MUNICIPAL LAWS CONCERNING WAGES, COMPENSATION OR EMPLOYEE BENEFITS, CLAIMS OF FAILURE TO PAY WAGES FOR ALL HOURS WORKED, FAILURE TO PAY OVERTIME, FAILURE TO PAY WAGES DUE ON TERMINATION, FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS, ENTITLEMENT TO WAITING TIME PENALTIES, CLAIMS RELATING TO EMPLOYMENT STATUS, CLASSIFICATION AND RELATIONSHIP WITH THE COMPANY AND/OR ANY OTHER CLAIMS INVOLVING EMPLOYEE COMPENSATION ISSUES, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, THE FAIR LABOR STANDARDS ACT AND THE CALIFORNIA LABOR CODE.

- WE ALSO AGREE TO ARBITRATE ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE, BUT NOT DISPUTES ABOUT THE ENFORCEABILITY,REVOCABILITY OR VALIDITY OF THIS AGREEMENT TO ARBITRATE OR ANY PORTION HEREOF OR THE CLASS, COLLECTIVE AND REPRESENTATIVE PROCEEDING WAIVER HEREIN. WITH RESPECT TO ALL SUCH CLAIMS AND DISPUTES THAT WE AGREE TO ARBITRATE, WE HEREBY EXPRESSLY AGREE TO WAIVE, AND DO WAIVE, ANY RIGHT TO A TRIAL BY JURY.

**9.2 Class Action Waiver. WE EXPRESSLY INTEND AND AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, (1) CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION PROCEDURES SHALL NOT BE INVOKED, NOR WILL**

THEY APPLY, IN ANY ARBITRATION PURSUANT TO THIS AGREEMENT; (2) I WILL NOT ASSERT CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION CLAIMS AGAINST THE COMPANY IN ARBITRATION OR ANY OTHER FORUM; AND (3) I SHALL ONLY SUBMIT MY OWN INDIVIDUAL CLAIMS IN ARBITRATION AND WILL NOT SEEK TO REPRESENT THE INTERESTS OF ANY OTHER PERSON. NOTWITHSTANDING THE FOREGOING, I UNDERSTAND THAT I MAY BRING A PROCEEDING AS A PRIVATE ATTORNEY GENERAL AS PERMITTED BY LAW AND THAT NOTHING IN THIS AGREEMENT CONSTITUTES A WAIVER OF MY RIGHTS UNDER SECTION 7 OF THE NATIONAL LABOR RELATIONS ACT. WE FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

ANY ISSUE CONCERNING THE VALIDITY OF THIS CLASS ACTION, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER, AND WHETHER AN ACTION MAY PROCEED AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MUST BE DECIDED BY A COURT AND AN ARBITRATOR SHALL NOT HAVE AUTHORITY TO CONSIDER THE ISSUE OF THE VALIDITY OF THIS WAIVER OR WHETHER THE ACTION MAY PROCEED AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION. IF FOR ANY REASON THIS CLASS, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER IS FOUND TO BE UNENFORCEABLE, THE CLASS, COLLECTIVE OR REPRESENTATIVE CLAIM MAY ONLY BE HEARD IN COURT AND MAY NOT BE ARBITRATED. NO ARBITRATION AWARD OR DECISION WILL HAVE ANY PRECLUSIVE EFFECT AS TO ISSUES OR CLAIMS IN ANY DISPUTE WITH ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

**9.3 Procedure.** WE AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"), WHICH ARE AVAILABLE AT AT http://www.jamsadr.com/rules-employment-arbitration/ AND A PRINTED COPY IS AVAILABLE FROM HUMAN RESOURCES OR LEGAL. WE AGREE THAT THOSE RULES SHALL NOT BE CONSTRUED TO ALLOW CLASS ACTION ARBITRATION AND THAT A COURT, RATHER THAN THE ARBITRATOR, SHALL DECIDE CLASS-RELATED ISSUES. WE AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, AND MOTIONS TO DISMISS AND DEMURRERS, APPLYING THE STANDARDS SET FORTH IN GOVERNING LAW OF THIS AGREEMENT. WE AGREE THAT THE ARBITRATOR SHALL ISSUE A WRITTEN DECISION ON THE MERITS. WE ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER GOVERNING LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, WHERE PROVIDED BY APPLICABLE LAW. WE AGREE THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. WE AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH GOVERNING LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH GOVERNING LAW, GOVERNING LAW SHALL TAKE PRECEDENCE. WE AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SAN FRANCISCO COUNTY, CALIFORNIA, UNLESS I CHOOSE TO HAVE THE ARBITRATION IN THE COUNTY WHERE I PRIMARILY WORKED FOR THE COMPANY

AT THE TIME WHEN THE DISPUTE FIRST AROSE.

**9.4 Venue.** EXCEPT AS MANDATED BY GOVERNING LAW OR THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL VENUE FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY GOVERNING LAW AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE OR PARTICIPATE IN COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

**9.5 Claims Not Covered By Agreement.** WE UNDERSTAND AND AGREE THAT THIS AGREEMENT DOES NOT COVER THE FOLLOWING DISPUTES AND CLAIMS WHICH SHALL THEREFORE BE RESOLVED IN ANY APPROPRIATE FORUM AS REQUIRED BY THE LAWS IN EFFECT: CLAIMS FOR WORKERS' COMPENSATION BENEFITS, UNEMPLOYMENT INSURANCE, OR STATE OR FEDERAL DISABILITY INSURANCE; CLAIMS FOR TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF (INCLUDING A TEMPORARY RESTRAINING ORDER) IN AID OF ARBITRATION OR TO MAINTAIN THE STATUS QUO PENDING ARBITRATION, IN A COURT OF COMPETENT JURISDICTION IN ACCORDANCE WITH APPLICABLE LAW; OR ANY OTHER DISPUTE OR CLAIM THAT HAS BEEN EXPRESSLY EXCLUDED FROM ARBITRATION BY STATUTE. NOTHING IN THIS AGREEMENT SHOULD BE INTERPRETED AS RESTRICTING OR PROHIBITING ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE, OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY THAT IS AUTHORIZED TO ENFORCE OR ADMINISTER LAWS RELATED TO EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, THE DEPARTMENT OF LABOR, OR THE OCCUPATIONAL SAFETY AND HEALTH COMMISSION (EXCEPT THAT WE ACKNOWLEDGE THAT I MAY NOT RECOVER ANY MONETARY BENEFITS IN CONNECTION WITH ANY SUCH CLAIM, CHARGE OR PROCEEDING). A FEDERAL, STATE, OR LOCAL AGENCY WOULD ALSO BE ENTITLED TO INVESTIGATE THE CHARGE IN ACCORDANCE WITH APPLICABLE LAW. HOWEVER, ANY DISPUTE OR CLAIM THAT IS COVERED BY THIS AGREEMENT BUT NOT RESOLVED THROUGH THE FEDERAL, STATE, OR LOCAL AGENCY PROCEEDINGS MUST BE SUBMITTED TO ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT.

**9.6 Voluntary Nature of Agreement.** I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE TEXT OF CALIFORNIA LABOR CODE SECTION 2870 IN <u>EXHIBIT B</u>. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL OR HEARING BEFORE A JUDGE.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

# 10. GENERAL PROVISIONS.

**10.1 Governing Law; Venue under Certain Circumstances.** This Agreement and any dispute related hereto will be governed and interpreted by and under the laws of the State of California ("Governing Law"), unless I opt to arbitrate a dispute in the county where I primarily worked for the Company at the time the dispute first arose, in which case the law of the state where that county is located shall govern. If the arbitration provision in this Agreement is not enforced for any reason or it is necessary to seek an order from a court

to enforce arbitration or preserve the status quo via an injunction, I consent, with the understanding that the Company also consents in such circumstances, to the personal jurisdiction and venue in the state and federal courts for the county where the Company's principal place of business is located.

**10.2 Severability.** If any provision of this Agreement is held to be invalid or unenforceable for any reason, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

**10.3 Survival.** This Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor or other assignee, and shall be binding upon my heirs and legal representatives.

**10.4 At-will Employment.** I understand my employment with the Company is for an indefinite term and is "at-will." Accordingly, I understand and agree that either I or the Company may terminate this employment relationship at any time, with or without cause, and with or without notice. I understand this "at-will" relationship may be changed only by a written agreement entered into specifically for that purpose and signed by the Company's Chief Executive Officer and General Counsel. I also understand that my employment will be governed by the Company's various policies and programs, in writing and otherwise, that the Company may change those policies and programs from time to time in its discretion, and that no such policy or program modifications will change the voluntary "at-will" nature of my employment in any way.

**10.5 Notices.** Each party must deliver all notices or other communications required or permitted under this Agreement in writing to the other party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested) or by a nationally-recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each party may change its address for receipt of notice by giving notice of the change to the other party.

**10.6 Injunctive Relief.** I acknowledge that because my services are personal and unique and because I will have access to the Confidential Information of the Company, my breach of this Agreement would cause irreparable injury to the Company for which monetary damages would not be an adequate remedy and, therefore, will entitle the Company to injunctive relief (including specific performance). The rights and remedies provided to each party in this Agreement are cumulative and in addition to any other rights and remedies available to such party at law or in equity.

**10.7 Export.** I agree not to export, directly or indirectly, any U.S. technical data acquired from the Company or any products utilizing such data, to countries outside the United States, because such export could be in violation of the United States export laws or regulations.

**10.8 Entire Agreement.** If no other agreement governs nondisclosure and assignment of inventions during any period in which I am employed or am in the future retained by the Company as an independent contractor, the obligations pursuant to sections of this Agreement titled "Confidentiality" and "Inventions" shall apply to such period. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of that provision or any other provision on any other occasion. This Agreement is

the final, complete and exclusive agreement of the parties with respect to the subject matters hereof and supersedes and merges all prior communications between us with respect to such matters. No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by me and the CEO of the Company. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

This Agreement shall be effective as of the first day of my employment with the Company.

**EMPLOYEE**

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT AND HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS IT WITH INDEPENDENT LEGAL COUNSEL.

☑ Signature
Hunter Green 4/2/2018 6:48 PM
Checking the checkbox above is equivalent to a handwritten signature.

Title:
Retail Solar Adviser

Address 1:
2232 6th St

Address 2:

| City: | State: | Zip: |
|---|---|---|
| Berkeley | CA | 94710 |

---

**SUNRUN INC. ACCEPTED AND AGREED:**

_(Signature)_

By:
Chad Herring

Title:
VP, Human Resources

Date:
8/10/2018

Address:
595 Market Street, Floor 29
San Francisco, CA 94105

---

**EXHIBIT A**
**INVENTIONS**

**1. Prior Inventions Disclosure.** The following is a complete list of all my Prior Inventions:

☑ None

☐ See immediately below:

**2. Limited Exclusion Notification.**

**THIS IS TO NOTIFY** you in accordance with Section 2872 of the California Labor Code that the foregoing Agreement between you and the Company does not require you to assign or offer to assign to the Company any Invention that you develop entirely on your own time without using the Company's equipment, supplies, facilities or trade secret information, except for those Inventions that either:

**a.** Relate at the time of conception or reduction to practice to the Company's business, or actual or demonstrably anticipated research or development; or

**b .** Result from any work performed by you for the Company.

To the extent a provision in the foregoing Agreement purports to require you to assign an Invention otherwise excluded from the preceding paragraph, the provision is against the public policy of this state and is unenforceable.

This limited exclusion does not apply to any patent or Invention covered by a contract between the Company and the United States or any of its agencies requiring full title to such patent or Invention to be in the United States. Similar exclusions may apply under the laws of other states.

---

**EXHIBIT B**
**CALIFORNIA LABOR CODE SECTION 2870**

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    (2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

| From: | Smith, Philip |
|---|---|
| To: | Jose Marin |
| Cc: | Gervy Jhon Tesoro |
| Subject: | RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD) |
| Date: | Wednesday, June 9, 2021 2:39:00 PM |
| Attachments: | Caseanywhere - Sunrun.pdf |
| | Rafael Prieto v. Sunrun - Hearing on MTC.PDF |

All,

I've attached a very recent court order from April 30, 2021 enforcing Sunrun's arbitration agreement and granting the motion to compel.  As you'll see, the subject arbitration agreement was electronically signed by the plaintiff and its terms were found lawful under California and federal law.

As we discussed, can you please let me know as a matter of professional courtesy by the end of this week whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil



**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** service@caseanywhere.com <service@caseanywhere.com>
**Sent:** Wednesday, April 28, 2021 1:55 PM
**To:**
**Subject:** Message Posted in Prieto, et al. v. Sunrun Installation Services, Inc., Case No. 20STCV41605



The following message has been posted in **Prieto, et al. v. Sunrun Installation Services, Inc.**, 20STCV41605:

**Message Title:** Tentative ruling for 4/30/21 hearing
**To:** Court and All Counsel
**Posted By:** Hon. Daniel Buckley
**Representing:** Los Angeles Superior Court
**Posting Date:** 4/28/21
**Time of Posting:** 1:51 PM

**Message:**
TENTATIVE RULING

MOTION: Motion to Compel Arbitration
HEARING DATE: April 30, 2021

CASE NUMBER: 20STCV41605
CASE NAME: Rafael Prieto v. Sunrun Installation Services, Inc.

MOVING PARTY: Defendant Sunrun Installation Services, Inc.
RESPONDING PARTY: Plaintiff Rafael Prieto

TRIAL DATE: Not Set

Background

On October 28, 2020, Plaintiff Rafael Prieto filed this putative wage and hour class action against Defendant Sunrun Installation Services, Inc. The complaint asserts causes of action for: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to permit rest breaks; (5) failure to provide accurate itemized wage statements; (6) failure to pay all wages due upon separation of employment; and (7) violation of Business & Professions Code § 17200 et seq.

Defendant now moves to: (1) compel Plaintiff's individual claims to arbitration; (2) dismiss Plaintiff's class allegations; and (3) stay or dismiss this proceeding pending resolution of arbitration.

Discussion

A. Legal Standard.

A party to an arbitration agreement may summarily move or petition the Court for an order compelling another non-compliant party to arbitrate their covered claims. See Civ. Proc. Code §§ 1281.2, 1290.2; 9 U.S.C. §§ 4, 6. Under California law, "[a] proceeding to compel arbitration is [essentially] a suit in equity to compel specific performance of a contract." Freeman v. State Farm Mut. Auto. Ins. Co., 14 Cal. 3d 473, 479 (1975). Accordingly, there is no right to a jury trial in

such proceedings, and the trial court-absent a clear and unmistakable delegation of the questions of enforceability and arbitrability to the arbitrator-sits as the trier-of-fact to reach a final determination on all issues, including the existence, validity, and scope of the agreement. Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996); see BG Group, PLC v. Republic of Argentina, 572 U.S. 25, 33-35 (2014); cf. 9 U.S.C. § 4 (providing that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court . . . shall make an order referring the issue or issues to a jury").

The compelling party has the initial burdens to (1) affirmatively admit and allege the existence of a written arbitration agreement, and (2) prove the existence of that agreement by a preponderance of the evidence. Rosenthal, 14 Cal. 4th at 413; Brodke v. Alphatec Spine Inc., 160 Cal. App. 4th 1569, 1574-78 (2008) (holding that a moving defendant "cannot rely on the allegations in the [plaintiff's] complaint to meet their pleading burden" that an arbitration agreement exists). Afterwards, the burden shifts to the responding party to prove that the agreement is unenforceable on some ground by a preponderance of the evidence. Rosenthal, 14 Cal. 4th at 413.

In any event, the party asserting the applicability of the Federal Arbitration Act ("FAA") "bears the burden to show it applies by presenting evidence establishing [that] the contract with the arbitration provision has a substantial relationship to interstate commerce . . . ." Carbajal v. CWPSC, Inc., 245 Cal. App. 4th 227, 238 (2016). The FAA embodies "a strong federal policy in favor of arbitration agreements." Boucher v. Alliance Title Co., Inc., 127 Cal. App. 4th 262, 267 (2005). Thus, whenever the FAA applies, "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA[.]" Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1415 (2019) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011).

B. The FAA Applies Here.

Defendant provides solar power installation and maintenance services and is engaged in interstate commerce. O'Quin Decl. ¶ 3. The parties expressly agreed to apply the substantive provisions of the FAA. Id. ¶ 2, Ex. B. § 9.1. Plaintiff does not specifically oppose the application of the FAA. Accordingly, the Court finds the FAA applies.

C. Defendant Met its Burden to Establish the Existence of an Arbitration Agreement Between the Parties.

"With respect to the moving party's burden to provide evidence of the existence of an agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to the court." Baker v. Italian Maple Holdings, LLC, 13 Cal. App. 5th 1152, 1160 (2017).

Defendant provides the declaration of Jessica O'Quin, Defendant's Senior Director, Talent Business Partner, who attaches the offer letter and The Employee Confidentiality, Inventions Assignment and Arbitration Agreement (California) electronically signed by Plaintiff. O'Quin Decl. ¶¶ 2, 8-9, Ex. A-B. Plaintiff's opposition does not dispute signing the arbitration agreement.

D. The Employee Confidentiality, Inventions Assignment and Arbitration Agreement (California) Covers Plaintiffs' Claims.

a. The Terms of the Arbitration Agreement.

Section 9 of the Employee Confidentiality, Inventions Assignment and Arbitration Agreement (California) is titled Mutual Agreement to Arbitrate. O'Quin Decl. ¶ 2, Ex. B. In relevant part, the arbitration provision provides:

IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES, AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, THE COMPANY AND I AGREE TO ARBITRATE BEFORE A NEUTRAL ARBITRATOR ANY AND ALL

CONTROVERSIES, CLAIMS, OR DISPUTES BETWEEN US (INCLUDING CLAIMS INVOLVING ANY CURRENT OR FORMER EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER, OR AGENT OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, UNDER THE FEDERAL ARBITRATION ACT ("FAA") AND ANY OTHER ARBITRATION PROVISIONS SET FORTH IN GOVERNING LAW (AS DEFINED IN SECTION 9.1 OF THIS AGREEMENT). FOR THE AVOIDANCE OF DOUBT, THE FAA SHALL CONTINUE TO APPLY WITH FULL FORCE AND EFFECT NOTWITHSTANDING THE APPLICATION OF PROCEDURAL RULES SET FORTH IN GOVERNING LAW.

DISPUTES THAT WE AGREE TO ARBITRATE, AND FOR WHICH WE THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY AND ALL EXISTING OR FUTURE DISPUTES OR CLAIMS ARISING OUT OF OR RELATING TO MY RECRUITMENT, EMPLOYMENT OR SEPARATION FROM EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS WHETHER THEY ARISE UNDER COMMON LAW, OR IN TORT, CONTRACT, OR PURSUANT TO A STATUTE, REGULATION, OR ORDINANCE NOW IN EXISTENCE OR WHICH MAY IN THE FUTURE BE ENACTED OR RECOGNIZED:

. . .

CLAIMS FOR NON-PAYMENT OR INCORRECT PAYMENT OF WAGES, COMMISSIONS, BONUSES, SEVERANCE, AND EMPLOYEE FRINGE BENEFITS, STOCK OPTIONS AND THE LIKE, WHETHER SUCH CLAIMS BE PURSUANT TO ALLEGED EXPRESS OR IMPLIED CONTRACT OR OBLIGATION, EQUITY, AND ANY FEDERAL, STATE, OR MUNICIPAL LAWS CONCERNING WAGES, COMPENSATION OR EMPLOYEE BENEFITS, CLAIMS OF FAILURE TO PAY WAGES FOR ALL HOURS WORKED, FAILURE TO PAY OVERTIME, FAILURE TO PAY WAGES DUE ON TERMINATION, FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS, ENTITLEMENT TO WAITING TIME PENALTIES, CLAIMS RELATING TO EMPLOYMENT STATUS, CLASSIFICATION AND RELATIONSHIP WITH THE COMPANY AND/OR ANY OTHER CLAIMS INVOLVING EMPLOYEE COMPENSATION ISSUES, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, THE FAIR LABOR STANDARDS ACT AND THE CALIFORNIA LABOR CODE.

O'Quin Decl. ¶ 2, Ex. B § 9.1. The agreement also contains a class action waiver. Id. § 9.2. Thus, Plaintiff's claims are clearly encompassed within the arbitration agreement.

In opposition, Plaintiff cites section 9.5, entitled "Claims Not Covered by Agreement," which provides, in relevant part:

WE UNDERSTAND AND AGREE THAT THIS AGREEMENT DOES NOT COVER THE FOLLOWING DISPUTES AND CLAIMS WHICH SHALL THEREFORE BE RESOLVED IN ANY APPROPRIATE FORUM AS REQUIRED BY THE LAWS IN EFFECT: CLAIMS FOR WORKERS' COMPENSATION BENEFITS, UNEMPLOYMENT INSURANCE, OR STATE OR FEDERAL DISABILITY INSURANCE; CLAIMS FOR TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF (INCLUDING A TEMPORARY RESTRAINING ORDER) IN AID OF ARBITRATION OR TO MAINTAIN THE STATUS QUO PENDING ARBITRATION, IN A COURT OF COMPETENT JURISDICTION IN ACCORDANCE WITH APPLICABLE LAW; OR ANY OTHER DISPUTE OR CLAIM THAT HAS BEEN EXPRESSLY EXCLUDED FROM ARBITRATION BY STATUTE.

O'Quin Decl. ¶ 2, Ex. B § 9.5.

b. Labor Code Section 229 Does Not Apply to Plaintiff's Claims as Enumerated in the Complaint.

Plaintiff's sole argument in opposition is that Labor Code section 229 establishes "claim[s] that ha[ve] been expressly excluded from arbitration by statute" within the meaning of Section 9.5 of the arbitration agreement and therefore some of Plaintiff's Labor Code claims are excluded from arbitration. O'Quin Decl. ¶ 2, Ex. B § 9.5; Opp. at 2-4.

Labor Code section 229 provides "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." The statute only applies to claims for unpaid wages within Sections 200 through 244 of the Labor Code. See Lane v. Francis Capital Management LLC, 224 Cal. App. 4th 676, 686 (2014) ("the plain language of section 229 is limited to actions for the collection of due and unpaid wages brought under sections 200 through 244; section 229 does not apply to all statutory wage and hour claims.").

Plaintiff contends his "claims under Labor Code §§ 201, 202, 203, 204, 210, 226, and 226.7 are therefore excluded from the scope of the agreement and are not arbitrable." Opp. at 3:19-21. However, none of the claims asserted in Plaintiff's complaint seek "the collection of due and unpaid wages" within the meaning of Labor Code section 229.

Plaintiff's first and second causes of action which seek minimum and overtime wages are brought under Labor Code sections 510, 1182.12, 1194, 1194.2, 1197, 1198, and the applicable wage orders. Compl. ¶¶ 37-54. Accordingly, they are not brought under Sections 200 through 244 of the Labor Code and Labor Code section 229 does not apply.

Plaintiff's third and fourth causes of action for meal and rest break violations under Labor Code section 226.7 are not claims for unpaid wages and are also not covered by Labor Code section 229. Compl. ¶¶ 55-70; Lane, supra, 224 Cal. App. 4th at 684 ("As to the fifth cause of action, styled 'Failure To Pay Unpaid Meal and Rest Period Wages' under section 226.7, it is not, in fact, an action for the 'collection of due and unpaid wages,' but one for a failure to provide mandated meal or rest breaks.").

Similarly, Plaintiff's fifth cause of action for failure to provide accurate wage statements under Labor Code section 226 does not seek unpaid wages. Compl. ¶ 71-77. Plaintiff's sixth cause of action while styled as a "failure to pay all wages due upon separation of employment" claim, solely seeks waiting time penalties under Labor Code section 201, 202, and 203. Compl. ¶¶ 78-83. Accordingly, the fifth and sixth causes of action are not governed by Labor Code section 229. Lane, supra, 224 Cal. App. 4th at 684 ("Similarly, as to the sixth and seventh causes of action, they do not seek to collect due and unpaid wages; rather, they are actions for 'waiting time penalties' (sixth cause of action) and for failure to provide itemized wage statements (seventh cause of action)."). Plaintiff's seventh cause of action is brought under Business and Professions Code section 17200, which is also not governed by Labor Code section 229.

Finally, Plaintiff cites Labor Code 204 and 210 in his opposition, which do not serve as the basis for any of the separately stated claims in the complaint. Compl. ¶ 5. Moreover, Labor Code section 204 sets forth a bimonthly payment requirement and Labor Code section 210 imposes penalties for non-compliance. Thus, these statutes also do not support claims for "the collection of due and unpaid wages" as required for the application of Labor Code section 229.

c. Labor Code Section 229 is Preempted by the FAA and is not Made Applicable by Operation of Section 9.5 of the Agreement.

Even if Plaintiff sought individual unpaid wages within the meaning of Labor Code section 229, the FAA, which is applicable here, preempts Labor Code section 229. Performance Team Freight Systems, Inc. v. Aleman, 241 Cal. App. 4th 1233, 1240 (2015) ("In matters in which the FAA applies, it preempts Labor Code section 229, requiring arbitration of claims that otherwise could be resolved in court.") citing Perry v. Thomas, 482 U.S. 483, 490-492 (1987).

Furthermore, the arbitration agreement does not permit the application of Labor Code section 229 to avoid arbitration. Plaintiff's reliance upon the maxims of contractual interpretation that specific clauses control over general clauses and contract interpretations should avoid surplusage is misplaced. In section 9.1, the parties specifically agreed to arbitrate all "claims under . . . the California Labor Code." O'Quin Decl. ¶ 2, Ex. B § 9.1. The agreement to arbitrate Labor Code claims is more specific than the general reference to claims excluded from arbitration by statute. Plaintiff's citation to Rebolledo v. Tilly's, Inc., 228 Cal. App. 4th 900 (2014) does not aid Plaintiff as

the exclusion in Rebolledo expressly excluded "matters governed by" and "any manner within the jurisdiction of" the California Labor Commissioner. Id. at 907-908. The exclusion in the parties' agreement here is general, not specific. Plaintiff's additional citation to the unpublished Nava opinion is improper. Lebrilla v. Farmers Group, Inc., 119 Cal. App. 4th 1070, 1077 (2004) ("In California an unpublished opinion may not be cited or relied upon."); CRC 8.1115(a).

Additionally, Labor Code section 229 is not the only statute excluding claims from arbitration. In reply, Defendant contends Labor Code section 229 does not expressly exclude claims from arbitration, Reply at 7:1-20, which is contrary to the prevailing interpretation of this section. Bravo v. RADC Enterprises, Inc., 33 Cal. App. 5th 920, 922 (2019) ("The parties could not have intended to apply Labor Code section 229 to this contract because that section prohibits arbitrating wage claims and requires courts to disregard private agreements to arbitrate."); Muller v. Roy Miller Freight Lines, LLC, 34 Cal. App. 5th 1056, 1070 (2019) ("Section 229 renders the parties' arbitration agreement ineffective on Muller's cause of action for unpaid wages."). Nevertheless, requiring Plaintiff to arbitrate his Labor Code claims, as expressly enumerated in section 9.1 of the agreement, does not render the exclusionary phrase in section 9.5 surplusage. Rather, Plaintiff's interpretation applying Labor Code section 229 would improperly render the arbitration agreement's express requirement that the parties arbitrate "claims for non-payment or incorrect payment of wages" surplusage. O'Quin Decl. ¶ 2, Ex. B § 9.1. The Court is not persuaded by Plaintiff's arguments.

The Court is also guided by Bravo, supra, 33 Cal. App. 5th 920. In Bravo, the trial court found while the FAA applied, the choice of law provision "[t]his Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of California" required application of Labor Code section 229 to deny arbitration as to certain claims. Id. at 921-922. In reversing the trial court, the Court of Appeal in Bravo stated:

The text of the agreement swiftly announces its objective: the parties will arbitrate "any and all disputes" arising from Bravo's employment, "including any claims brought by the Employee related to wages" under the California Labor Code. The main point of the deal was to arbitrate all employment disputes. The parties could not have intended to apply Labor Code section 229 to this contract because that section prohibits arbitrating wage claims and requires courts to disregard private agreements to arbitrate. (Lab. Code, § 229.) Applying this California law would contradict the parties' intent to arbitrate "any and all disputes," including claims "related to wages ...."

Bravo, supra, 33 Cal. App. 5th at 922-923. Similarly, the parties here agreed to arbitrate "all employment-related disputes" and expressly identified the non-payment of wages and all wage disputes under the California Labor Code as claims subject to arbitration. O'Quin Decl. ¶ 2, Ex. B § 9.1. Applying the phrase "any other dispute or claim that has been expressly excluded from arbitration by statute" in section 9.5 to exempt Plaintiff's wage claims from arbitration under Labor Code section 229, as Plaintiff urges, would not "effectuate and harmonize all contract provisions" as required and would "contradict the parties' intent" to arbitrate wage disputes. Id. § 9.5; Bravo, supra, 33 Cal. App. 5th at 923.

The Court finds Plaintiff agreed to arbitrate all of the individual claims asserted in this action.

E. The Agreement is Enforceable Because It Does Not Violate Armendariz.

In Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83 (2000), the California Supreme Court held that pre-dispute arbitration agreements covering nonwaivable statutory claims must meet five requirements to be enforceable. In so holding, the Armendariz Court noted that, while certain statutory rights can be waived, public policy-codified in Civil Code sections 1668 and 3513, respectively-prohibits individuals from: (1) contractually insulating themselves from liability for fraud, willful injury to others, or violations of law; or (2) contravening laws established for a public reason by private agreement. Id. at 100. Consequently, the Supreme Court held that an arbitration agreement may only be enforced against an employee "if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not

require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'" Id. at 102 (quoting Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

As demonstrated by Defendant, the agreement complies with the Armendariz requirements. Mot. at 11-12; O'Quin Decl. ¶ 2, Ex. B. Plaintiff does not argue the agreement is unconscionable or that the agreement violates Armendariz. Accordingly, the agreement is enforceable under California law.

Conclusion

Defendant's motion is GRANTED. Plaintiff's class allegations are STRICKEN, see AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346-48 (2011), and this case is STAYED pending resolution of arbitration, see Civ. Proc. Code § 1281.4.

**To reply to this message online, please click <u>here</u>.** This message will also be saved as part of the case file. You will be directed to the Case Anywhere log in page. After entering your username and password, you will be taken to the requested message thread. If you have saved your log in information by selecting the "Remember me at this computer" option, you will be automatically logged in and directed to this posting.

If your organization is no longer involved in the above-referenced matter, or if there is any other reason your organization's subscription should be terminated, please contact us immediately. It is your organization's responsibility to request removal from the case site and conclusion of your subscription for this matter.

Please contact us by phone at (800) 884-3163 or (818) 650-1040 or by email at support@caseanywhere.com if you have any questions.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 1

**20STCV41605**                                              April 30, 2021
**RAFAEL PRIETO vs SUNRUN INSTALLATION SERVICES**                10:30 AM
**INC.**

Judge: Honorable Daniel J. Buckley          CSR: None
Judicial Assistant: S. Chung                ERM: None
Courtroom Assistant: E. Munoz               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Fawn F. Bekam (Telephonic) via LACC

For Defendant(s): Shaun Jordan Voigt via LACC (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion to Compel Arbitration; Status Conference

The matter is called for hearing.

The tentative ruling is posted on the e-service provider, Case Anywhere, for parties to review.

The Motion to Compel Arbitration filed by Sunrun Installation Services Inc. on 04/02/2021 is Granted.

The Court, pursuant to an oral request made by Plaintiff, orders Cause(s) of Action individual claims and class claims in Complaint filed by Rafael Prieto on 10/28/2020 dismissed without prejudice.

Plaintiff's request to file a First Amended Complaint is granted.

Non-Appearance Case Review Re: Filing First Amended Complaint is scheduled for 05/14/2021 at 04:00 PM in Department 1 at Spring Street Courthouse.

When the First Amended Complaint is filed, the Court will transfer it to the Civil Supervising Judge for reassignment to an IC Court.

Minute Order                                            Page 1 of 1

| From: | Smith, Philip |
|---|---|
| To: | Jose Marin |
| Cc: | Gervy Jhon Tesoro |
| Subject: | RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD) |
| Date: | Monday, June 14, 2021 1:25:00 PM |

All,

I wanted to follow up on my earlier correspondence providing, for your consideration, a recent court order enforcing Sunrun's arbitration agreement.

Can you please let me know as a matter of professional courtesy by the end of today whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil



**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website    *On the Front Lines of Workplace Law*[SM]

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Smith, Philip
**Sent:** Wednesday, June 9, 2021 2:39 PM
**To:** Jose Marin <jose@josemarinlaw.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

All,

I've attached a very recent court order from April 30, 2021 enforcing Sunrun's arbitration agreement and granting the motion to compel.  As you'll see, the subject arbitration agreement was electronically signed by the plaintiff and its terms were found lawful under California and federal law.

As we discussed, can you please let me know as a matter of professional courtesy by the end of this week whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil



**Philip Smith**
**Of Counsel**

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

 vCard | Bio | Website    ***On the Front Lines of Workplace Law***SM

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

| From: | Smith, Philip |
|---|---|
| To: | Gervy Jhon Tesoro |
| Cc: | Jose Marin |
| Subject: | RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD) |
| Date: | Wednesday, June 16, 2021 8:02:00 AM |

All,

I wanted to follow up on my earlier correspondence to confirm whether Ms. Hunter Green will stipulate to arbitrate her claims.

Based upon our past discussions, it was my understanding that your office doesn't have a preference between arbitration or staying in court and is open to both but Ms. Hunter Green had declined to arbitrate because she contends she did not sign the arbitration agreement.  However, you can see from the arbitration agreement I provided you that Ms. Hunter Green electronically signed the arbitration agreement on April 2, 2018 at 6:48 pm.  I also provided you with a very recent court order enforcing Sunrun's arbitration agreement based in part upon the plaintiff's electronic signature, which was authenticated by Sunrun's evidence.  As we discussed, Sunrun will also be able to authenticate Ms. Hunter Green's electronic signature to her arbitration agreement in this matter.

Consequently, I again ask that Ms. Hunter Green stipulate to arbitration.  Given our previous discussions, it seems unnecessary to file a motion to compel arbitration but, if Ms. Hunter Green will not stipulate to arbitrate, Defendants will have no choice but to seek judicial relief and move to compel arbitration.

Can you please let me know as a matter of professional courtesy today whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Thank you for your attention to this matter.

Phil



**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard  |  Bio  |  Website    *On the Front Lines of Workplace Law*<sup>SM</sup>

*This message may contain confidential and privileged information. If it has been sent to you in error, please
reply to advise the sender of the error, then immediately delete this message.*

**From:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Sent:** Monday, June 14, 2021 1:33 PM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Jose Marin <jose@josemarinlaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Hi Philip:

We have not yet had a chance to speak with our client, once we do, we will let you know right away whether or not you should draft the stipulation.

Best,
Jhon

On Jun 14, 2021, at 1:25 PM, Smith, Philip <psmith@fisherphillips.com> wrote:

All,

I wanted to follow up on my earlier correspondence providing, for your consideration, a recent court order enforcing Sunrun's arbitration agreement.

Can you please let me know as a matter of professional courtesy by the end of today whether Ms. Hunter Green is willing to arbitrate her claims? If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil



**Philip Smith**
**Of Counsel**

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Smith, Philip
**Sent:** Wednesday, June 9, 2021 2:39 PM
**To:** Jose Marin <jose@josemarinlaw.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

All,

I've attached a very recent court order from April 30, 2021 enforcing Sunrun's arbitration agreement and granting the motion to compel. As you'll see, the subject arbitration agreement was electronically signed by the plaintiff and its terms were found lawful under California and federal law.

As we discussed, can you please let me know as a matter of professional courtesy by the end of this week whether Ms. Hunter Green is willing to arbitrate her claims? If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil



**Philip Smith**
**Of Counsel**

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027



vCard  |  Bio  |  Website    *On the Front Lines of Workplace Law*SM

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

| From: | Smith, Philip |
|---|---|
| To: | Jose Marin |
| Cc: | Gervy Jhon Tesoro |
| Subject: | RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD) |
| Date: | Monday, June 21, 2021 12:54:00 PM |

All,

I wanted to follow up on our earlier correspondence to confirm whether Ms. Hunter Green will stipulate to arbitrate her claims.

Given our previous discussions, it seems unnecessary to file a motion to compel arbitration but, if Ms. Hunter Green will not stipulate to arbitrate, Defendants will have no choice but to seek judicial relief and move to compel arbitration.

Can you please let me know as a matter of professional courtesy today whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Thank you for your attention to this matter.

Phil



**Philip Smith**
Of Counsel
Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard  |  Bio  |  Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Jose Marin <jose@josemarinlaw.com>
**Sent:** Wednesday, June 16, 2021 8:47 AM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Looks good. Thanks again

On Wed, Jun 16, 2021 at 8:44 AM Smith, Philip <psmith@fisherphillips.com> wrote:

> Jose,
>
> I've attached the stipulation to extend Defendants' deadline to respond by one week to June 29, 2021.  Please let me know if you have any comments or questions.  Otherwise, please let me know if I have your consent to electronically sign and file the stipulation on your behalf today.
>
> Thank you,
>
> Phil
>
> **Philip Smith**
> Of Counsel
> Fisher & Phillips LLP
> One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
> psmith@fisherphillips.com | O: (415) 490-9027
>
> vCard  |  Bio  |  Website   *On the Front Lines of Workplace Law℠*
>
> *This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*
>
> **From:** Jose Marin <jose@josemarinlaw.com>
> **Sent:** Wednesday, June 16, 2021 8:33 AM
> **To:** Smith, Philip <psmith@fisherphillips.com>
> **Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
> **Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)
>
> I do not see an issue with it. Thank you for preparing the stipulations.
>
> On Wed, Jun 16, 2021 at 8:22 AM Smith, Philip <psmith@fisherphillips.com> wrote:
>
>> Hi Jose,
>>
>> Understood and thank you for confirming.  Thank you for agreeing to extend the deadline to respond under the circumstances.  Because the initial case management conference is scheduled for July 6, 2021, I propose the parties agree to a further one-week extension of Defendants' deadline to respond—the new deadline would be June 29, 2021.
>>
>> Please let me know if you are agreeable and, if yes, I will circulate a stipulation for the same this morning.
>>
>> Thank you,

Phil


**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*™

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Jose Marin <jose@josemarinlaw.com>
**Sent:** Wednesday, June 16, 2021 8:17 AM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Phillip,

I will reach out again to Ms. Green. Unfortunately, she has not been going through some medical issues that required some medical intervention, which has made it difficult to communicate. Would you be willing to wait longer? As always, we can extend deadlines. Let me know if that is okay. Otherwise, please do proceed with the motion and we will respond accordingly.

Best,
Jose

On Wed, Jun 16, 2021 at 8:02 AM Smith, Philip <psmith@fisherphillips.com> wrote:

All,

I wanted to follow up on my earlier correspondence to confirm whether Ms. Hunter Green will stipulate to arbitrate her claims.

Based upon our past discussions, it was my understanding that your office doesn't have a preference between arbitration or staying in court and is open to both but Ms. Hunter Green had declined to arbitrate because she contends she did not sign the arbitration agreement. However, you can see from the arbitration agreement I provided you that Ms. Hunter Green electronically signed the arbitration agreement on April 2, 2018 at 6:48 pm. I also provided you with a very recent court order enforcing Sunrun's arbitration agreement based in part upon the plaintiff's electronic signature, which was authenticated by Sunrun's evidence. As we discussed, Sunrun will also be able to authenticate Ms. Hunter Green's electronic signature to her arbitration agreement in this matter.

Consequently, I again ask that Ms. Hunter Green stipulate to arbitration. Given our previous discussions, it seems unnecessary to file a motion to compel arbitration but, if Ms. Hunter Green will not stipulate to arbitrate, Defendants will have no choice but to seek judicial relief and move to compel arbitration.

Can you please let me know as a matter of professional courtesy today whether Ms. Hunter Green is willing to arbitrate her claims? If yes, I will prepare an appropriate stipulation to file with the court.

Thank you for your attention to this matter.

Phil


**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*™

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Sent:** Monday, June 14, 2021 1:33 PM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Jose Marin <jose@josemarinlaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Hi Philip:

We have not yet had a chance to speak with our client, once we do, we will let you know right away whether or not you should draft the stipulation.

Best,
Jhon

On Jun 14, 2021, at 1:25 PM, Smith, Philip <psmith@fisherphillips.com> wrote:

All,

I wanted to follow up on my earlier correspondence providing, for your consideration, a recent court order enforcing Sunrun's arbitration agreement.

Can you please let me know as a matter of professional courtesy by the end of today whether Ms. Hunter Green is willing to arbitrate her claims? If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil



**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*™

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

---

**From:** Smith, Philip
**Sent:** Wednesday, June 9, 2021 2:39 PM
**To:** Jose Marin <jose@josemarinlaw.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

All,

I've attached a very recent court order from April 30, 2021 enforcing Sunrun's arbitration agreement and granting the motion to compel. As you'll see, the subject arbitration agreement was electronically signed by the plaintiff and its terms were found lawful under California and federal law.

As we discussed, can you please let me know as a matter of professional courtesy by the end of this week whether Ms. Hunter Green is willing to arbitrate her claims? If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*™

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

--



**Jose Z. Marin, Esq.**
Jose Marin Law
(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street  San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature



--

photo

**Jose Z. Marin, Esq.**
Jose Marin Law
(415) 753-3539 | jose@.josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

--

photo

**Jose Z. Marin, Esq.**
Jose Marin Law
(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

| | |
|---|---|
| From: | Gervy Jhon Tesoro |
| To: | Smith, Philip |
| Cc: | Jose Marin |
| Subject: | Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD) |
| Date: | Tuesday, June 22, 2021 8:21:19 AM |

Hi Philip:

That is correct.

-Jhon

On Tue, Jun 22, 2021 at 6:57 AM Smith, Philip <psmith@fisherphillips.com> wrote:

> Jose,
>
> Can you confirm if Ms. Hunter Green is still declining to arbitrate because she contends she didn't sign the arbitration agreement?  Any clarification is appreciated.
>
> Thanks,
>
> Phil
>
> **Philip Smith**
> Of Counsel
> Fisher & Phillips LLP
> One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
> psmith@fisherphillips.com | O: (415) 490-9027
> vCard | Bio | Website    *On the Front Lines of Workplace Law*™
> This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.
>
> **From:** Jose Marin <jose@josemarinlaw.com>
> **Sent:** Monday, June 21, 2021 3:40 PM
> **To:** Smith, Philip <psmith@fisherphillips.com>; Gervy Jhon Tesoro <jhon@tesorolaw.com>
> **Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)
>
> Dear Philip,
>
> Hope you had a good weekend. Unfortunately, Plaintiff will not stipulate to arbitration. Please do file the motion and we will respond accordingly. Let me know if you have questions.
>
> Best,
>
> Jose
>
> On Mon, Jun 21, 2021 at 12:54 PM Smith, Philip <psmith@fisherphillips.com> wrote:
>
>> All,
>>
>> I wanted to follow up on our earlier correspondence to confirm whether Ms. Hunter Green will stipulate to arbitrate her claims.
>>
>> Given our previous discussions, it seems unnecessary to file a motion to compel arbitration but, if Ms. Hunter Green will not stipulate to arbitrate, Defendants will have no choice but to seek judicial relief and move to compel arbitration.
>>
>> Can you please let me know as a matter of professional courtesy today whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.
>>
>> Thank you for your attention to this matter.

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   On the Front Lines of Workplace Law℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Jose Marin <jose@josemarinlaw.com>
**Sent:** Wednesday, June 16, 2021 8:47 AM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Looks good. Thanks again

On Wed, Jun 16, 2021 at 8:44 AM Smith, Philip <psmith@fisherphillips.com> wrote:

Jose,

I've attached the stipulation to extend Defendants' deadline to respond by one week to June 29, 2021. Please let me know if you have any comments or questions. Otherwise, please let me know if I have your consent to electronically sign and file the stipulation on your behalf today.

Thank you,

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   On the Front Lines of Workplace Law℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Jose Marin <jose@josemarinlaw.com>
**Sent:** Wednesday, June 16, 2021 8:33 AM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

I do not see an issue with it. Thank you for preparing the stipulations.

On Wed, Jun 16, 2021 at 8:22 AM Smith, Philip <psmith@fisherphillips.com> wrote:

Hi Jose,

Understood and thank you for confirming. Thank you for agreeing to extend the deadline to respond under the circumstances. Because the initial case management conference is scheduled for July 6, 2021, I propose the parties agree to a further one-week extension of Defendants' deadline to respond —the new deadline would be June 29, 2021.

Please let me know if you are agreeable and, if yes, I will circulate a stipulation for the same this morning.

Thank you,

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Jose Marin <jose@josemarinlaw.com>
**Sent:** Wednesday, June 16, 2021 8:17 AM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Phillip,

I will reach out again to Ms. Green. Unfortunately, she has not been going through some medical issues that required some medical intervention, which has made it difficult to communicate. Would you be willing to wait longer? As always, we can extend deadlines. Let me know if that is okay. Otherwise, please do proceed with the motion and we will respond accordingly.

Best,
Jose

On Wed, Jun 16, 2021 at 8:02 AM Smith, Philip <psmith@fisherphillips.com> wrote:

All,

I wanted to follow up on my earlier correspondence to confirm whether Ms. Hunter Green will stipulate to arbitrate her claims.

Based upon our past discussions, it was my understanding that your office doesn't have a preference between arbitration or staying in court and is open to both but Ms. Hunter Green had declined to arbitrate because she contends she did not sign the arbitration agreement. However, you can see from the arbitration agreement I provided you that Ms. Hunter Green electronically signed the arbitration agreement on April 2, 2018 at 6:48 pm. I also provided you with a very recent court order enforcing Sunrun's arbitration agreement based in part upon the plaintiff's electronic signature, which was authenticated by Sunrun's evidence. As we discussed, Sunrun will also be able to authenticate Ms. Hunter Green's electronic signature in this matter.

Consequently, I again ask that Ms. Hunter Green stipulate to arbitration. Given our previous discussions, it seems unnecessary to file a motion to compel arbitration but, if Ms. Hunter Green will not stipulate to arbitrate, Defendants will have no choice but to seek judicial relief and move to compel arbitration.

Can you please let me know as a matter of professional courtesy today whether Ms. Hunter Green is willing to arbitrate her claims? If yes, I will prepare an appropriate stipulation to file with the court.

Thank you for your attention to this matter.

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Sent:** Monday, June 14, 2021 1:33 PM
**To:** Smith, Philip <psmith@fisherphillips.com>
**Cc:** Jose Marin <jose@josemarinlaw.com>
**Subject:** Re: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

Hi Philip:

We have not yet had a chance to speak with our client, once we do, we will let you know right away whether or not you should draft the stipulation.

Best,

Jhon

On Jun 14, 2021, at 1:25 PM, Smith, Philip <psmith@fisherphillips.com> wrote:

All,

I wanted to follow up on my earlier correspondence providing, for your consideration, a recent court order enforcing Sunrun's arbitration agreement.

Can you please let me know as a matter of professional courtesy by the end of today whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil

**Philip Smith**
Of Counsel

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027

vCard | Bio | Website   On the Front Lines of Workplace Law℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Smith, Philip
**Sent:** Wednesday, June 9, 2021 2:39 PM
**To:** Jose Marin <jose@josemarinlaw.com>
**Cc:** Gervy Jhon Tesoro <jhon@tesorolaw.com>
**Subject:** RE: Mary Hunter Green v. Sunrun Inc., et al. (Case No. 5:21-cv-02387-VKD)

All,

I've attached a very recent court order from April 30, 2021 enforcing Sunrun's arbitration agreement and granting the motion to compel.  As you'll see, the subject arbitration agreement was electronically signed by the plaintiff and its terms were found lawful under California and federal law.

As we discussed, can you please let me know as a matter of professional courtesy by the end of this week whether Ms. Hunter Green is willing to arbitrate her claims?  If yes, I will prepare an appropriate stipulation to file with the court.

Please let me know if you have any comments or questions or would like to discuss further.

Thank you for your attention to this matter.

Phil

**Philip Smith**
**Of Counsel**
Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
psmith@fisherphillips.com | O: (415) 490-9027
vCard  |  Bio  |  Website    **On the Front Lines of Workplace Law**SM
*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**Jose Z. Marin, Esq.**
Jose Marin Law

(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

**Jose Z. Marin, Esq.**
Jose Marin Law

(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

**Jose Z. Marin, Esq.**
Jose Marin Law

photo

(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

--

photo

**Jose Z. Marin, Esq.**
Jose Marin Law

(415) 753-3539 | jose@josemarinlaw.com
www.josemarinlaw.com
2537 Irving Street, San Francisco, CA 94122

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

Create your own email signature

--
Gervy Jhon Tesoro Esq.
TESORO LAW

NOTICE: The information contained in this e-mail message and any attachments are confidential and may be legally privileged. This message is intended only for the individual(s) named herein or other contacts of TESORO LAW specifically authorized to receive this communication. If you are not the intended recipient, please notify the sender and delete the message immediately. Please do not store, copy or otherwise disseminate or distribute this e-mail or any part of it.

**EXHIBIT D**



# JAMS Employment Arbitration Rules & Procedures

*Effective June 1, 2021*

We understand that there is a lot on the line in arbitration. We know attorneys count on JAMS to provide highly skilled arbitrators who use JAMS Managed Arbitration Process to save time and money. JAMS offers efficiency, speed, and results.

If another arbitration provider was written into your contract, **call an experienced JAMS Case Manager** to discuss having your case administered by JAMS.

A summary of the June 1, 2021 revisions may be found **here**.

## Related Links

- **Arbitration Services at JAMS**
- **Employment ADR Services at JAMS**
- **Submit a Case**

## Table of Contents

- **Rule 1. Scope of Rules**
- **Rule 2. Party Self-Determination**
- **Rule 3. Amendment of Rules**
- **Rule 4. Conflict with Law**
- **Rule 5. Commencing an Arbitration**
- **Rule 6. Preliminary and Administrative Matters**
- **Rule 7. Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson**
- **Rule 8. Service**
- **Rule 9. Notice of Claims**
- **Rule 10. Changes of Claims**
- **Rule 11. Interpretation of Rules and Jurisdictional Challenges**
- **Rule 12. Representation**
- **Rule 13. Withdrawal from Arbitration**
- **Rule 14. *Ex Parte* Communications**
- **Rule 15. Arbitrator Selection, Disclosures and Replacement**
- **Rule 16. Preliminary Conference**
- **Rule 17. Exchange of Information**

- **Rule 18. Summary Disposition of a Claim or Issue**
- **Rule 19. Scheduling and Location of Hearing**
- **Rule 20. Pre-Hearing Submissions**
- **Rule 21. Securing Witnesses and Documents for the Arbitration Hearing**
- **Rule 22. The Arbitration Hearing**
- **Rule 23. Waiver of Hearing**
- **Rule 24. Awards**
- **Rule 25. Enforcement of the Award**
- **Rule 26. Confidentiality and Privacy**
- **Rule 27. Waiver**
- **Rule 28. Settlement and Consent Award**
- **Rule 29. Sanctions**
- **Rule 30. Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability**
- **Rule 31. Fees**
- **Rule 32. Bracketed (or High-Low) Arbitration Option**
- **Rule 33. Final Offer (or Baseball) Arbitration Option**
- **Rule 34. Optional Arbitration Appeal Procedure**

## Rule 1. Scope of Rules

(a) The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b) The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c) The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d) JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e) The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f) "Electronic filing" (e-filing) means the electronic transmission of documents to JAMS for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents to a party, attorney or representative under these Rules.

## Rule 2. Party Self-Determination

(a) The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b) When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance

with JAMS Rules.

## Rule 3. Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## Rule 4. Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## Rule 5. Commencing an Arbitration

(a) The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i) A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii) A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii) A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv) The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or

(v) A copy of a court order compelling Arbitration at JAMS.

(b) The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties together with evidence that the Demand for Arbitration has been served on all Parties.

(c) If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d) The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirement, such as the statute of limitations; any contractual limitations period; or any claims notice requirement. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rules 3, 13(a), 17(a) and 31(a)).

## Rule 6. Preliminary and Administrative Matters

(a) JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b) If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c) If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed,

and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d) JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e) Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i) If a Party files more than one Arbitration with JAMS, JAMS may consolidate two or more of the Arbitrations into a single Arbitration.

(ii) Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii) Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f) Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## Rule 7. Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a) The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b) In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed, in advance of the Arbitration Hearing, to produce documents.

(c) Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## Rule 8. Service

(a) JAMS or the Arbitrator may at any time require electronic filing and service of documents in an Arbitration, including through the JAMS Electronic Filing System. If JAMS or the Arbitrator requires electronic filing and service, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of documents and notifications. Any document filed via the JAMS Electronic Filing System shall be considered as filed when the transmission to the JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date.

(b) Every document filed with the JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to the JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney.

(c) Delivery of e-service documents through the JAMS Electronic Filing System shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through the JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service or JAMS completes the transmission of the electronic document(s) to the JAMS Electronic Filing System for e-filing and/or e-service.

(d) If an electronic filing and/or service via the JAMS Electronic Filing System does not occur due to technical error in the transmission of the document, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed and/or served *nunc pro tunc* to the date it was first attempted to be transmitted electronically. In such cases a Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e) For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f) In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period. If the last day for the performance of any act that is required by these rules to be performed within a specific time falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday.

## Rule 9. Notice of Claims

(a) Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b) Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c) Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have. JAMS may grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the Arbitrator.

(d) Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e) Any claim or counterclaim to which no response has been served will be deemed denied.

(f) Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## Rule 10. Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## Rule 11. Interpretation of Rules and Jurisdictional Challenges

(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c) Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d) The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## Rule 12. Representation

(a) The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone number and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b) Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone number and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

(c) The Arbitrator may withhold approval of any intended change or addition to a Party's legal representative(s) where such change or addition could compromise the ability of the Arbitrator to continue to serve, the composition of the Panel in the case of a tripartite Arbitration or the finality of any Award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitrator shall have regard to the circumstances, including the general principle that a Party may be represented by a legal representative chosen by that Party, the stage that the Arbitration has reached, the potential prejudice resulting from the possible disqualification of the Arbitrator, the efficiency resulting from maintaining the composition of the Panel (as constituted throughout the Arbitration), the views of the other Party or Parties to the Arbitration and any likely wasted costs or loss of time resulting from such change or addition.

## Rule 13. Withdrawal from Arbitration

(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b) A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## Rule 14. *Ex Parte* Communications

(a) No Party may have any *ex parte* communication with a neutral Arbitrator, except as provided in section (b) of this Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b) A Party may have *ex parte* communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c) The Parties may agree to permit more extensive *ex parte* communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## Rule 15. Arbitrator Selection, Disclosures and Replacement

(a) Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b) If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and at least ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c) Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d) If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e) If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f) Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection, considering such factors as whether they are represented by the same attorney and whether they are presenting joint or separate positions at the Arbitration.

(g) If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h) Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties and their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i) At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j) Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party that did not appoint that Arbitrator.

## Rule 16. Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a) The exchange of information in accordance with Rule 17 or otherwise;

(b) The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c) The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d) The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e) The attendance of witnesses as contemplated by Rule 21;

(f) The scheduling of any dispositive motion pursuant to Rule 18;

(g) The premarking of exhibits, the preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h) The form of the Award; and

(i) Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## Rule 17. Exchange of Information

(a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

(c) As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d) The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

(e) The Parties may take discovery of third parties with the approval of the Arbitrator.

## Rule 18. Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case.

## Rule 19. Scheduling and Location of Hearing

(a) The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b) If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c) The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third-party witness.

## Rule 20. Pre-Hearing Submissions

(a) Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b) The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 21. Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## Rule 22. The Arbitration Hearing

(a) The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual party with information about a significant issue.

(b) The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c) The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d) Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e) The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony, even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f) The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g) The Arbitrator has full authority to determine that the Hearing, or any portion thereof, be conducted in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form. If some or all of the witnesses or other participants are located remotely, the Arbitrator may make such orders and set such procedures as the Arbitrator deems necessary or advisable.

(h) When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i) At any time before the Award is rendered, the Arbitrator may, *sua sponte* or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j) The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k) Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. No other means of recording the proceedings shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

(i) The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii) If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii) If the Parties agree to the Optional Arbitration Appeal Procedure (see Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing.

(iv) The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 23. Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 24. Awards

(a) The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b) Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c) In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d) In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e) Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f) The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g) The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h) The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an Arbitration Agreement that is required as a condition of employment.

(i) After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j) Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and file with JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31 or on account of the effect of an offer to allow judgment), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file and serve any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k) The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 25. Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, *et seq.*, or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## Rule 26. Confidentiality and Privacy

(a) JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b) The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c) Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 27. Waiver

(a) If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 28. Settlement and Consent Award

(a) The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b) The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 29. Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## Rule 30. Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a) The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b) The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c) The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## Rule 31. Fees

(a) Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b) JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c) If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an Employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d) Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities or individuals are adverse for purpose of fees, considering such factors as whether the entities or individuals are represented by the same attorney and whether the entities or individuals are presenting joint or separate positions at the Arbitration.

## Rule 32. Bracketed (or High-Low) Arbitration Option

(a) At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b) JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c) The Arbitrator shall render the Award in accordance with Rule 24.

(d) In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 33. Final Offer (or Baseball) Arbitration Option

(a) Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration

Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b) If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c) If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d) Other than as provided herein, the provisions of Rule 24 shall be applicable.

## Rule 34. Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

## Local Solutions. Global Reach. ™

JAMS successfully resolves business and legal disputes by providing efficient, cost-effective and impartial ways of overcoming barriers at any stage of conflict. JAMS offers customized, in-person, virtual and hybrid dispute resolution services through a combination of first class client service, the latest technology, top-notch facilities, and highly trained mediators and arbitrators.

## Employment Rules & Procedures

- Complete List of Rules & Procedures ›
- Employment Clauses ›

## JAMS Employment Practice Group

- Employment Practice Brochure (PDF) ›

## Fees & Costs

- **Arbitration Schedule of Fees & Costs ›**

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949-224-1810.*



**SUMMARY OF REVISIONS TO EMPLOYMENT ARBITRATION RULES**

JAMS Employment Arbitration Rules, Amended and Effective June 1, 2021.

**Rule 1. Scope of Rules**

Rule 1(f): The revised rule clarifies the meanings of "electronic filing" and "electronic service."

**Rule 2. Party Self-Determination**

Rule 2(b): The revised rule eliminates the word "subsequently" from the phrase "the Parties may subsequently agree."

**Rule 5. Commencing an Arbitration**

Rule 5(a)(iv): The revised rule includes the phrase "where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules." This revision clarifies JAMS' administrative authority in certain situations in the convening stages of an arbitration. For example, where a respondent fails to object timely to JAMS' administration, JAMS may determine that it can proceed with administration even if the parties' arbitration agreement does not name JAMS or the JAMS Rules (e.g., the parties' agreement is silent as to arbitration provider and rules). Where a respondent does object timely to JAMS' administration, JAMS may determine that it can proceed with administration if the parties' arbitration agreement specifies JAMS or the JAMS Rules.

**Rule 6. Preliminary and Administrative Matters**

Rule 6(e)(i): The revised rule adds the words "two or more of." This addition clarifies JAMS' authority in certain instances to consolidate any number of a party's multiple arbitration filings into a single proceeding.

**Rule 7. Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson**

Rule 7(b): The revised rule adds the phrase "in advance of the Arbitration Hearing" to the last sentence.

**Rule 8. Service**

The revised Rule 8 aligns electronic filing and service in a JAMS arbitration with the functionality of JAMS' new electronic case management system, JAMS Access (referred to in the rules as "the JAMS Electronic Filing System").

Rule 8(a): Previously, this rule allowed the arbitrator to require electronic filing and service at any time. The revised rule clarifies that JAMS or the arbitrator may require electronic filing and service at any time.

Rule 8(b): The revised rule eliminates the requirement for a filing party to maintain in paper format the "original signature" of third parties.

Rule 8(f): The revised rule includes the following sentence: "If the last day for the performance of any act that is required by these Rules to be performed within a specific time falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday."

**Rule 9. Notice of Claims**

Rule 9 (c): The revised rule allows JAMS to grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the arbitrator.

**Rule 12. Representation**

The revised Rule 12 eliminates all references to fax numbers.

Rule 12(c): This new rule allows an arbitrator (or tripartite panel) to withhold approval of any intended change in party representation where the change could compromise the ability of the arbitrator (or panel) to continue to serve or the finality of an award.

**Rule 15. Arbitrator Selection, Disclosures and Replacement**

Rule 15(b): The revised rule adds the words "at least" in the following: "at least ten (10) Arbitrator candidates in the case of a tripartite panel." This addition makes explicit JAMS' authority to include more than 10 names in a list of arbitrator candidates for a tripartite panel. (Both the prior and revised versions of this rule make explicit JAMS' authority to include more than five names in a list of candidates for a sole arbitrator.) The revised rule also includes the words "add names to or" in the following: "JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause." This addition makes explicit JAMS' authority to supplement a list of arbitrator candidates—in addition to replacing any or all names—for reasonable cause.

Rule 15(f): With the addition of the words "or individuals," the revised rule makes explicit JAMS' longstanding practice of treating both entities and individuals whose interests are not adverse as a single party for purposes of the arbitrator selection process.

**Rule 17. Exchange of Information**

Rule 17(e): This new rule makes explicit that in a consumer or employment arbitration, the parties may take discovery of third parties with the approval of the arbitrator.

**Rule 18. Summary Disposition of a Claim or Issue**

The revised Rule 18 provides that an arbitrator may permit a party to file a motion for summary disposition of a claim or issue only if the arbitrator determines the party has shown that the proposed motion for summary disposition is likely to succeed and to dispose of or narrow the issues in the case.

**Rule 22. The Arbitration Hearing**

Rule 22(g): The revised rule makes explicit the arbitrator's full authority to conduct the hearing in person, virtually or in a combined form, and with participants in more than one geographic location. It further makes explicit the arbitrator's authority to issue orders and set procedures as needed if hearing participants are located remotely.

Rule 22(k): Previously, this rule allowed a party to arrange for a stenographic "or other" record of the hearing. The revised rule maintains a party's ability to arrange for a stenographic record but eliminates its ability to arrange for "other" types of records of the hearing absent party agreement or the direction of arbitrator.

**Rule 31. Fees**

Rule 31(d): With the addition of the words "or individuals" in several places, the revised makes explicit JAMS' longstanding practice of treating both entities and individuals whose interests are not adverse as a single party for purposes of JAMS' assessment of fees.