KRISTEN J. NESBIT (SBN 2424260)
E-Mail: knesbit@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile:  (213) 330-4501

PHILIP J. SMITH (SBN 232462)
E-Mail:  psmith@fisherphillips.com
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone: (415) 490-9000
Facsimile:  (415) 490-9001

Attorneys for Defendants
SUNRUN INC. and COSTCO
WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| MARY HUNTER GREEN,<br><br>PLAINTIFF,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br>SUNRUN INC. AND DOES 1 THROUGH 20,<br><br>DEFENDANTS. | Case No:  5:21-CV-02387-VKD<br><br>Assigned to: *Magistrate Judge Virginia DeMarchi*<br><br>**DECLARATION OF JESSICA O'QUIN IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**<br><br>*[Filed Concurrently with: Sunrun Motion Notice of Motion and Motion to Compel; Notice of Joinder and Joinder to Defendant Sunrun Inc's Motion to Compel; Declaration of Philip J. Smith, and [Proposed] Order]*<br><br>Hearing:    August 17, 2021<br>Time:       10:00 a.m.<br>Courtroom:  2<br>Complaint Filed:  April 1, 2021<br>Trial Date:  None Set |

1

Case No. 5:21-CV-02387-VKD

**DECLARATION OF JESSICA O'QUIN IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

### DECLARATION OF JESSICA O'QUIN

I, JESSICA O'QUIN, declare and state as follows:

1.     I know all the facts stated in this declaration from my own personal knowledge. If sworn as a witness, I could and would competently so testify.  I submit this declaration in support of Sunrun Inc.'s ("Sunrun" or the "Company") motion to compel plaintiff Mary Hunter Green ("Ms. Green") claims in this case to arbitration.

2.     I am currently employed by Sunrun as a Senior Director, Talent Business Partner.  I have held this position since approximately November 30, 2015.

3.     In my capacity as Senior Director, Talent Business Partner, I am familiar with Sunrun's business operations.  Sunrun is incorporated in the State of Delaware and operates throughout the United States including, but not limited to, the states of California, Arizona, Colorado, Connecticut, Florida, Hawaii, Illinois, Massachusetts, Maryland, Nevada, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Rhone Island, South Carolina, Texas, Utah, Vermont and Wisconsin.  Sunrun provides solar electricity systems to customers throughout the country, and the materials utilized for this purpose are purchased from vendors and manufacturers across state lines. In addition, Sunrun and its employees use interstate communication networks including U.S. Mail, the internet, and telephones, to run the Company's business operations.  All of the above was the same at the time that Ms. Green was hired by the Company and remains so today.

4.     I work with the Company's employees throughout California and handle a wide variety of employment-related issues and inquiries. Through my role, I am familiar with the employment forms and policies that are provided by the Company to newly hired employees as part of the onboarding process, including a document titled "Employee Confidentiality, Inventions Assignments and Arbitration Agreement (California)."

5.     At all times relevant to Ms. Green's claims, as well as the commencement of her employment through the present, the Company has a policy of maintaining executed copies of certain employment-related documents, including executed copies of the "Employee Confidentiality, Inventions Assignments and Arbitration Agreement (California)," in each employee's respective personnel file.

**DECLARATION OF JESSICA O'QUIN IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

FP 40914003.1

1  These records are regularly maintained by the Company in the ordinary course of business as part of the

2  Company's business records.

3      6.      In my capacity as Senior Director, Talent Business Partner, I am familiar with the

4  Company's onboarding procedures for new hires.  It is the Company's general practice that when an

5  individual is offered a position, the Company provides such individuals with various onboarding

6  documents, including a written offer letter and the Employee Confidentiality, Inventions Assignments

7  and Arbitration Agreement (California), for their review and signature electronically through an iCims

8  online user account.

9      7.      In my capacity as Senior Director, Talent Business Partner, I am familiar with the process

10  by which individuals are provided with access to, and can electronically sign, the Company's online

11  onboarding documents.  In order to access the Company's online onboarding documents, individuals

12  register for a user account on the iCims website.  iCims is a third party recruiting software provider that

13  Sunrun utilizes for new hire onboarding and electronic signatures.  To complete their registration,

14  individuals must create a unique password, in addition to their user login name, to access the Company's

15  online onboarding documents through iCims' website.  Individuals cannot access the Company's online

16  onboarding documents unless they register as users and log in using their unique password.  This

17  password security protocol functions like many familiar password-protected sites on the internet.  Once

18  an individual creates his or her own unique password, iCims does not share the password with Sunrun

19  and Sunrun cannot obtain a user's password from iCims.  iCims' security protocols do not permit anyone

20  other than a user with the correct password to enter an employee's user account.  Sunrun does not have

21  the ability to directly access an individual's iCims user account nor can Sunrun perform any function

22  within an individual's user account as that user.  If an individual forgets his or her password, Sunrun has

23  no way to retrieve it and the individual must create a new unique password.  All of the above was the

24  same at the time that Ms. Green was hired by the Company and remains so today.

25      8.      Once an individual is presented with Sunrun's online onboarding documents, there is no

26  limit on the amount of time an individual may take to review and either reject or accept the Company's

27  online onboarding documents.  To agree and accept the terms of the Company's online onboarding

28

3  Case No. 5:21-CV-02387-VKD

**DECLARATION OF JESSICA O'QUIN IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

1   documents, individuals must affirmatively click to add a check within a checkbox field next to the terms

2   "ACCEPTED" or "Signature" displayed in each document. Every document containing either checkbox

3   explicitly states below that checkbox that "checking the checkbox above is equivalent to a handwritten

4   signature[.]" If an individual affirmatively places a check in such a checkbox, the individual is prompted

5   to confirm whether she or he chooses to sign the document or cancel their selection. If the individual

6   confirms she or he chooses to sign the document, the individual's electronic signature is generated on

7   the document along with the date and time the individual electronically signed the document. All of the

8   above was the same at the time that Ms. Green was hired by the Company and remains so today.

9       9.    It is Sunrun's normal procedure that after electronic documents are electronically signed,

10   the signed documents are saved electronically and ultimately become part of the individual's personnel

11   file maintain by Sunrun's HR department.

12       10.    As a Senior Director, Talent Business Partner, I have access to employees' personnel

13   files, as well as the Company's business records containing certain employee information, including

14   among other things, each respective employee's job history with the Company.

15       11.    I have reviewed Ms. Green's personnel file, to which I have direct and complete access,

16   and which is stored by Sunrun in the manner described herein and maintained in the ordinary course of

17   business. In Ms. Green's personnel file, I located a letter dated March 14, 2018 (the "Offer Letter"),

18   wherein the Company offered her the position of Retail Sales Advisor. The Offer Letter reflects that it

19   was accepted by Ms. Green on March 21, 2018 via electronic signature. She commenced her

20   employment with the Company effective April 2, 2018. Attached hereto as **Exhibit A** is a true and

21   correct copy of the Offer Letter, which is maintained by the Company in Ms. Green's personnel file.

22       12.    Ms. Green's personnel file also includes an Employee Confidentiality, Inventions

23   Assignments and Arbitration Agreement (California) (hereinafter the "Arbitration Agreement"), wherein

24   she and the Company agreed to utilize binding arbitration to resolve all employment disputes between

25   Ms. Green and the Company. A true and correct copy of the Employee Confidentiality, Inventions

26   Assignment and Arbitration Agreement electronically signed by Ms. Green on April 2, 2018, is attached

27   hereto as **Exhibit B**.

28

**DECLARATION OF JESSICA O'QUIN IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

FP 40914003.1

1    I declare under penalty of perjury under the laws of the State of California and the United States

2   of America that the foregoing is true and correct.

3        Executed on _____29_____ June, 2021 at Westminster, Colorado.

By: _____

JESSICA O'QUIN.

**DECLARATION OF JESSICA O'QUIN IN SUPPORT OF DEFENDANT SUNRUN INC.'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION IN LIEU OF FILING ANSWER**

FP 40914003.1

# EXHIBIT A



3/14/2018

Dear Hunter,

Sunrun Inc (the "Company" or "Sunrun"), is pleased to offer you the full-time non-exempt position of Retail Sales Advisor, reporting to Tris Mota, Supervisor, Lead Gen Retail. This position is located at the following Sunrun location: METROMARKET – CA - Bay Area.

Your proposed first day of employment ("Proposed Start Date") will be 3/26/2018. Upon completing and passing the Sunrun background check, your first day of employment ("Confirmed Start Date") will be confirmed via email notification. You recognize that Sunrun is a quickly growing and evolving organization, and as such the Company may periodically change your Proposed Start Date, position, duties, and work location, as it deems appropriate.

**HOURLY RATE**
Your hourly rate will be $16.00, less applicable tax withholdings, and will be paid bi-weekly. As a non-exempt employee you are also entitled to receive overtime in accordance with applicable state and federal law.

**VARIABLE INCENTIVE COMPENSATION**
In addition to your hourly rate, you will also be eligible to earn additional incentive compensation subject to the terms of the Company's variable incentive compensation plan applicable to your position. You will be provided a copy of Sunrun's 2018 Retail Solar Advisor Incentive Plan applicable to your position, which you must read and sign before you are eligible to earn any incentive compensation.

Incentive compensation plans are subject to change at the Company's discretion.

**PAID TIME OFF**
As an employee, you will also be eligible to receive certain employee benefits including annual Paid Time Off (PTO). The accrual and use of PTO is governed by the Company's latest PTO policy, which is attached to this letter. The Company may modify benefits, including but not limited to its PTO policy, from time to time as it deems necessary.

**BACKGROUND CHECK & PROOF OF ELIGIBILITY**
Your employment is contingent upon the Company's receipt of proof of eligibility to work in the United States within three (3) business days of your date of hire and completion of a satisfactory reference check. This offer of employment is also contingent on you passing a criminal background check and if applicable, a 5-panel drug test and a Motor Vehicle Report (MVR) background check. Please note that Sunrun reserves the right to run an annual background check for employees who have physical contact with customers, and at any time during an employee's employment if there is a business need.

**OTHER TERMS OF EMPLOYMENT**
You agree not to engage in any other employment, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your

employment (whether full-time or part-time), nor will you engage in any other activities that conflict with your obligations to the Company without the prior written permission of the Company.

Employment with the Company is for no specific period of time. Your employment with the Company is "at will," meaning that either you or the Company may terminate your employment at any time for any reason. Although the Company may change your job duties, title, compensation and benefits, as well as its personnel policies and procedures, the "at will" nature of your employment may only be changed in a written agreement signed by you and a duly authorized officer of the Company (other than you).

Sunrun extends this offer to you based upon your knowledge, background, experience, skills and abilities. You must not disclose or use confidential information or trade secrets of a current or prior employer while working for Sunrun. Do not bring to Sunrun any business records or materials from a current or prior employer. By signing this letter agreement, you promise the Company that you have no contractual obligations with a former employer, such as a non-compete or confidentiality agreement that would prohibit you from performing your duties for the Company.

As a Company employee, you will be expected to abide by the Company's rules and standards. Specifically, you will be required to sign an acknowledgment that you have read and that you understand the Company's rules of conduct which are included in the Company's Employee Guidebook.
In addition to this letter, to accept this offer of employment you must: (1) complete and sign the Company's employment application, (2) sign the Company's Employee Guidebook and related policies, and (3) sign the Company's Confidentiality, Inventions Assignment, and Arbitration Agreement (the "Confidentiality Agreement"). This letter, together with your executed Confidentiality Agreement, will form the complete and exclusive statement of your employment agreement with Sunrun. The employment terms in this letter supersede any other agreements or promises made to you by anyone, whether oral or written.

**ARBITRATION**
In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) the Company shall pay all the arbitration fees, except an amount equal to the filing fees you would have paid had you filed a complaint in a court of law.

Please sign this letter by 4/30/2018, if you wish to accept this employment opportunity at Sunrun under the terms described above. We look forward to working with you.

Sincerely,
Tris Mota

☑ **ACCEPTED:** Hunter Green 3/21/2018 5:21 PM
(checking the checkbox above is equivalent to a handwritten signature)

---

### INCENTIVE COMPENSATION PLAN ACKNOWLEDGEMENT

**Approval & Acceptance of 2018 Retail Solar Advisor Incentive Plan**

**Please click here** to download a copy of your Incentive Compensation Plan.

Participant's signature certifies that Participant has read, understands and accepts the 2018 Retail Solar Advisor Incentive Plan and all provisions therein.  All examples set forth in this Plan are provided for

illustrative purposes only. The Company must receive a signed copy of this Acknowledgement before any commissions can be earned.

I have read and understand this Plan and I accept all of its provisions as outlined in the 2018 Retail Solar Advisor Incentive Plan.

**Sunrun Manager Name:** Tris Mota

**Date:** March 20, 2018

☑ **I Accept Hunter Green 3/21/2018 5:21 PM**
(checking the checkbox above is equivalent to a handwritten signature)

## TERMS AND CONDITIONS ACKNOWLEDGEMENT

**Approval and Acceptance of 2018 Terms and Conditions**
**Please click here** to download a copy of the Sunrun Incentive Plan - 2018 Terms and Conditions (T&Cs).

Participant's signature certifies that Participant has read, understands, and accepts the 2018 Terms and Conditions and all provisions therein. The Company must receive a signed copy of the T&Cs Acknowledgement before any commission can be earned.

I have read, understand, and accept all provisions as outlined in the 2018 Terms and Conditions.

☑ **I Accept Hunter Green 3/21/2018 5:21 PM**
(checking the checkbox above is equivalent to a handwritten signature)

## CA 2810.5 - NOTICE TO EMPLOYEE (COMMISSION)

Employer Information

- Legal Name of Hiring Employer: Sunrun
- Other Names Hiring Employer is "doing business as": Sunrun Installation Services, AEE Solar, SnapNrack.
- Physical Address and phone number of Hiring Employer's Main Office: 595 Market Street, San Francisco, CA, 94105 -- (415) 580-6900

Wage Information

- Standard Rate of Pay*: USD $16.00/Hr.
- Overtime Rate of Pay (1.5)*: 24.00/Hr.
- Overtime Rate of Pay (2.0)*: 32.00/Hr.
- Rate by: Hour; Commission**
- A written agreement exists providing rate(s) of pay -- all rates of pay and bases thereof are contained in that written agreement. **
- Regular Payday: Friday, biweekly

* Overtime is paid in accordance with applicable state and federal law. The overtime rates are based on

your standard rate. Your actual overtime rate may vary and be adjusted based on your "regular rate" of pay as defined by applicable law.

** See written Commission Plan and Agreement, attached

Workers Compensation

- Insurance Carriers Name: Zurich
- Address: PO Box 968002 - Schaumburg, IL
- Phone: 1 (800) 987-3373
- Policy Number: WC-0136960-00 & WC-0136961-00

Paid Sick Leave

Unless exempt, the employee identified on this notice is entitled to minimum requirements for paid sick leave under state law which provides that an employee:

1. May accrue paid sick leave and may request and use up to 3 days or 24 hours of accrued paid sick leave per year.
2. May not be terminated or retaliated against for using or requesting the use of accrued paid sick leave.
3. Has the right to file a complaint against an employer who retaliates or discriminates against an employee for:

a. Requesting or using accrued sick days.
b. Attempting to exercise the right to use accrued paid sick days.
c. Filing a complaint or alleging a violation of Article 1.5 section 245 et seq. of the California Labor Code.
d. Cooperating in an investigation or prosecution of an alleged violation of this Article or opposing any policy or practice or act that is prohibited by Article 1.5 section 245 et seq. of the California Labor Code.

The following applies to the employee identified on this notice:

- Accrues paid sick leave pursuant to the employer's policy which satisfies or exceeds the accrual, carryover, and use requirements of Labor Code §246.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

☑ **I Accept Hunter Green 3/21/2018 5:21 PM**
(checking the checkbox above is equivalent to a handwritten signature)

# EXHIBIT B



**SUNRUN INC.**
**EMPLOYEE CONFIDENTIALITY, INVENTIONS ASSIGNMENT AND**
**ARBITRATION AGREEMENT (CALIFORNIA)**

In consideration of my employment or continued employment by Sunrun Inc., including its subsidiaries and affiliates (collectively the "Company") and benefits thereof (including access and receipt of the Company's trade secrets, Confidential Information, goodwill, and training), and the compensation the Company may pay to me now and during my employment, I agree to the terms of this Employee Confidentiality, Inventions Assignment and Arbitration Agreement (the "Agreement"):

**1. CONFIDENTIALITY.**

    **1.1 Nondisclosure; Recognition of the Company's Rights.** At all times during and after my employment, I will hold in confidence and will not disclose any of the Company's Confidential Information (defined below). I will only use Confidential Information as may be required in connection with my work for the Company, or as the Chief Executive Officer (the "CEO") of the Company or other duly authorized officer at the level of Vice President or above expressly authorizes in writing. I will obtain that officer's written approval before publishing or submitting for publication any material (written, oral or otherwise) that relates to my work at the Company and incorporates any Confidential Information. I agree that I obtain no title to any Confidential Information, and recognize that all Confidential Information is the sole and exclusive property of the Company. I understand that nothing in this Agreement is intended to limit my rights, or other Company employees' rights, to discuss employment terms, wages, and working conditions to the extent such rights are protected by applicable law.

    **1.2 Confidential Information.** "Confidential Information" means any and all non-public knowledge, data or information related to the Company's business or its actual or planned research or development, including (a) trade secrets, inventions, ideas, processes, computer source and object code, data, formulae, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques; (b) information regarding products, plans for research and development, marketing and business plans, budgets, financial statements, contracts, prices, suppliers and customers; (c) information regarding the skills and compensation of the Company's employees, contractors and any other Company service providers, to the extent the Company has a duty to maintain such information as private (this provision does not prevent any employee from sharing their own personnel information, or authorizing disclosure of their own personnel information by others, including for purposes of concerted activity under Section 7 of the National Labor Relations Act); and (d) the existence or content of any business discussions, negotiations or agreements between the Company and any third party; provided, however, Confidential Information does not include any of the foregoing items to the extent the same have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

    **1.3 Third Party Information.** I understand the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information

and to use it only for certain limited purposes. During and after the term of my employment I will hold Third Party Information in strict confidence and will not disclose to anyone (other than the Company personnel who need to know such information in connection with their work for the Company) or use Third Party Information except in connection with my work for the Company, or unless authorized by a duly authorized Company officer at the level of Vice President or above, in writing.

**1.4 No Improper Use of Information of Prior Employers and Others.** I represent that my employment by the Company does not and will not breach any agreement with any of my former employers, including any non- compete agreement or any agreement to keep in confidence information I acquired prior to joining the Company. I further represent that I have not entered into, and will not enter into, any written or oral agreement in conflict with my obligations under this Agreement. During my employment by the Company, I will not improperly use or disclose any confidential information or trade secrets of any former employer or other third party to whom I have an obligation of confidentiality, and I will not bring onto the Company's premises or use any unpublished documents or any property belonging to any former employer or other third party to whom I have an obligation of confidentiality, unless that former employer or person has expressly consented to that disclosure in writing. In the performance of my duties, I will use only information that is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or legally in the public domain, or is otherwise provided or developed by the Company.

**1.5 Exceptions.** Federal law provides certain protections to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances. Specifically, federal law provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret under either of the following conditions:

- Where the disclosure is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or

- Where the disclosure is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. *See* 18 U.S.C. § 1833(b)(1)).

Federal law also provides that an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order. *See* 18 U.S.C. § 1833(b)(2).

**2. PERMITTED DISCLOSURES AND ACTIONS.** To the fullest extent that the following disclosure or actions are permitted under then-applicable law, I understand and agree that nothing in this Agreement shall prohibit or restrict me from (a) initiating communications directly with, cooperating with, providing relevant information to or otherwise cooperating or assisting in an investigation by the U.S. Securities and Exchange Commission, the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, or any other governmental or regulatory body or official(s) or self-regulatory organization (collectively "Government Agency or Agencies") regarding a possible violation of any applicable law, rule or regulation or making disclosures that are protected under whistleblower provisions of applicable law(s); (b) responding to any inquiry from any such Government Agency or Agencies, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; or (c) testifying, participating or otherwise assisting in any action or proceeding relating to a possible violation of a law, rule or regulation. Moreover, nothing herein precludes me from disclosing or discussing wages or other terms and

conditions of employment, or otherwise exercising my Section 7 rights under the National Labor Relations Act. Further, nothing in this Agreement requires me to notify the Company of any such communications, participation, cooperation, assistance, responses to inquiries, testimony or participation as described in this section.

In making any such disclosures or communications, I understand that I must take all reasonable precautions to prevent any use or disclosure of information that may constitute Company Confidential Information to any parties other than the Government Agency or Agencies. I further understand that I am not permitted to disclose any Company attorney-client privileged communications.

## 3. INVENTIONS.

**3.1 Inventions and Intellectual Property Rights. "Invention"** means any ideas, concepts, information, materials, processes, data, programs, know-how, negative know-how, improvements, discoveries, developments, designs, artwork, formulae, copyrightable works or works of authorship, and techniques and all Intellectual Property Rights in any of such items. "Intellectual Property Rights" means all trade secrets, copyrights, trademarks, mask work rights, patents and other intellectual property rights recognized by the laws of any jurisdiction or country.

**3.2 Prior Inventions.** I have disclosed on Exhibit A all Inventions (a) I have, or I have caused to be, alone or jointly with others, conceived, developed or reduced to practice prior to beginning my employment with the Company, (b) in which I have an ownership interest or that I have a license to use, and (c) that I wish to exclude from this Agreement (collectively, "Prior Inventions"). If I have listed no Prior Inventions in Exhibit A, I warrant I have no such Prior Inventions. I agree I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions (defined below) without the Company's prior written consent. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company process, machine or other work, I hereby grant the Company a non-exclusive, perpetual, fully-paid and royalty-free, irrevocable and worldwide license, with rights to sublicense through multiple levels of sublicensees, to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in, such Prior Invention, all without need to account to me in any way for such uses.

**3.3 Assignment of the Company Inventions.** "Company Inventions" are Inventions assigned to the Company or to a third party as directed by the Company. I hereby assign (when any such Inventions or Intellectual Property Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) I make, conceive, reduce to practice or learn, either alone or with others, during the period of my employment by the Company, or with the use of Company equipment, supplies, facilities, or Confidential Information, except for Inventions I have listed on Exhibit A, and except for Inventions I can prove qualify fully under the provisions of a Specific Inventions Law (as defined below). Though the Company may ask me to sign specific assignments after the date of this Agreement, the assignment in this Agreement will be automatically effective with respect to any future Inventions referenced without need for further documentation. I agree, as the Company directs, to assign all my right, title, and interest in and to any particular Company Invention to a third party, including without limitation the United States. I agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," as the term is defined in the United States Copyright Act.

**3.4 Specific Inventions Law.** I recognize that, in the event of a specifically applicable state law, regulation, rule or public policy ("Specific Inventions Law"), this Agreement will not be deemed to require assignment of any invention which qualifies fully for protection under such Specific Inventions Law by virtue of the fact that any such invention was, for example, developed entirely on my own time without using the Company's equipment, supplies, facilities, or trade secrets and neither related to the Company's actual or anticipated business, research or development, nor resulted from work performed by me for the Company. California Labor Code Section 2870 (attached as Exhibit B) lawfully prohibits the assignment of these rights.

**3.5 Obligation to Keep the Company Informed.** While employed with the Company and for one (1) year after my employment ends, I will promptly and fully disclose to the Company in writing (a) all Inventions I author, conceive or reduce to practice, either alone or with others and including any that might be covered under California Labor Code Section 2870, and (b) all patent applications I file or in which I am named as an inventor or co- inventor.

**3.6 Enforcement of Intellectual Property Rights and Assistance.** During and after the period of my employment, I will assist the Company in every proper way to obtain and enforce United States and foreign Intellectual Property Rights relating to the Company Inventions. If the Company cannot secure my signature on any document needed in connection with such purposes, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, which appointment is coupled with an interest, to act on my behalf to execute and file any such documents and to do all other lawfully permitted acts to further such purposes with the same legal force and effect as if I executed them myself.

**3.7 Incorporation of Software Code.** I agree I will not incorporate into any Company software or otherwise deliver to the Company any software code licensed under the GNU GPL or LGPL or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, licensing or distribution of any source code the Company owns or licenses.

**3.8 Waiver of Moral Rights.** If I have any moral rights or other similar rights in any Company Inventions that I cannot assign to the Company, I hereby agree to waive all enforcement of such moral rights against the Company or any of its successors or assigns.

**4. RECORDS** I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form the Company requires) of all Inventions I make during my employment by the Company. I will make such records available to, and acknowledge they remain the sole property of, the Company at all times.

**5. NON-SOLICITATION.** I agree that (a) during my employment by the Company, I will not, without the Company's express written consent, engage in any employment or business activity that competes with, or would otherwise conflict with, my employment by the Company, and (b) during my employment by the Company and for one (I) year thereafter, I will not directly or indirectly solicit or attempt to solicit or recruit any employee, independent contractor or consultant of the Company to terminate a relationship with the Company in order to become an employee, consultant or independent contractor to or for any other person or entity.

**6. RETURN OF THE COMPANY PROPERTY.** Upon termination of my employment or upon the Company's request at any other time, I will deliver to the Company all originals and copies of the Company's property, equipment and documents, and any other material containing or disclosing any Inventions, Third Party Information or Confidential Information. I further will certify in writing that I have fully complied with the foregoing obligation. I agree I will not copy, delete or alter any information

contained upon my Company computer or Company equipment before I return it to the Company. In addition, if I have used any personal computer, server or e-mail system to receive, store, review, prepare or transmit any Confidential Information, I agree to provide the Company with a computer-useable copy of all such Confidential Information and then permanently delete such Confidential Information from those systems. In addition, I agree to provide the Company such access to my personal systems as the Company reasonably requests to verify that the necessary copying or deletion has been completed. I further agree that any property situated on the Company's premises and owned by the Company is subject to inspection by the Company's personnel at any time with or without notice. Prior to the termination of my employment or shortly after termination of my employment, I will cooperate with the Company in attending an exit interview and certify in writing that I have complied with the requirements of this section.

**7. NOTIFICATION OF NEW EMPLOYER.** If I leave the Company's employ, I consent to the notification of my new employer of my rights and obligations under this Agreement, by the Company's providing a copy of this Agreement or otherwise.

**8. NO EXPECTATION OF PRIVACY IN ELECTRONIC RESOURCES OR WORKSPACES.** I acknowledge I have no personal privacy rights with respect to the Company's electronic resources, which include but are not limited to all networking, computing, telephonic and other electronic systems to which I have access during my employment, nor do I have any personal privacy rights in any workspace within the Company's facilities. Accordingly, I understand the Company can access, monitor or search any such electronic resource or workspace at any time, with or without notice and with or without my consent.

**9. MUTUAL AGREEMENT TO ARBITRATE.**

**9.1 Arbitration. IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES, AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, THE COMPANY AND I AGREE TO ARBITRATE BEFORE A NEUTRAL ARBITRATOR ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES BETWEEN US (INCLUDING CLAIMS INVOLVING ANY CURRENT OR FORMER EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER, OR AGENT OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, UNDER THE FEDERAL ARBITRATION ACT ("FAA") AND ANY OTHER ARBITRATION PROVISIONS SET FORTH IN GOVERNING LAW (AS DEFINED IN SECTION 9.1 OF THIS AGREEMENT).** FOR THE AVOIDANCE OF DOUBT, THE FAA SHALL CONTINUE TO APPLY WITH FULL FORCE AND EFFECT NOTWITHSTANDING THE APPLICATION OF PROCEDURAL RULES SET FORTH IN GOVERNING LAW.

DISPUTES THAT WE AGREE TO ARBITRATE, AND FOR WHICH WE THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY AND ALL EXISTING OR FUTURE DISPUTES OR CLAIMS ARISING OUT OF OR RELATING TO MY RECRUITMENT, EMPLOYMENT OR SEPARATION FROM EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS WHETHER THEY ARISE UNDER COMMON LAW, OR IN TORT, CONTRACT, OR PURSUANT TO A STATUTE, REGULATION, OR ORDINANCE NOW IN EXISTENCE OR WHICH MAY IN THE FUTURE BE ENACTED OR RECOGNIZED:

- CLAIMS FOR FRAUD, PROMISSORYESTOPPEL, FRAUDULENT INDUCEMENT OF CONTRACT OR BREACH OF CONTRACT OR CONTRACTUAL

OBLIGATION, WHETHER SUCH ALLEGED CONTRACT OR OBLIGATION BE ORAL, WRITTEN, OR EXPRESS OR IMPLIED BY FACT OR LAW;

- CLAIMS FOR WRONGFUL TERMINATION OF EMPLOYMENT, VIOLATION OF PUBLIC POLICY AND CONSTRUCTIVE DISCHARGE, INFLICTION OF EMOTIONAL DISTRESS, MISREPRESENTATION, INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE, DEFAMATION, UNFAIR BUSINESS PRACTICES, TRADE SECRETS, CLAIMS ARISING UNDER THE UNIFORM TRADE SECRETS ACT, AND ANY TORT OR TORT-LIKE OR THE FORMATION OR TERMINATION THEREOF;

- CLAIMS OF HARASSMENT, DISCRIMINATION, OR RETALIATION, WHETHER ON THE BASIS OF AGE, SEX, RACE, NATIONAL ORIGIN, RELIGION, DISABILITY OR ANY OTHER UNLAWFUL BASIS, UNDER ANY AND ALL FEDERAL, STATE, OR MUNICIPAL STATUTES, REGULATIONS, ORDINANCES OR COMMON LAW, INCLUDING BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, SECTION 1981 OF THE CIVIL RIGHTS ACT, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE REHABILITATION ACT OF 1973, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE EQUAL PAY ACT OF 1963, THE FAMILY AND MEDICAL LEAVE ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, AND THE CALIFORNIA FAMILY RIGHTS ACT;

- CLAIMS FOR NON-PAYMENT OR INCORRECT PAYMENT OF WAGES, COMMISSIONS, BONUSES, SEVERANCE, AND EMPLOYEE FRINGE BENEFITS, STOCK OPTIONS AND THE LIKE, WHETHER SUCH CLAIMS BE PURSUANT TO ALLEGED EXPRESS OR IMPLIED CONTRACT OR OBLIGATION, EQUITY, AND ANY FEDERAL, STATE, OR MUNICIPAL LAWS CONCERNING WAGES, COMPENSATION OR EMPLOYEE BENEFITS, CLAIMS OF FAILURE TO PAY WAGES FOR ALL HOURS WORKED, FAILURE TO PAY OVERTIME, FAILURE TO PAY WAGES DUE ON TERMINATION, FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS, ENTITLEMENT TO WAITING TIME PENALTIES, CLAIMS RELATING TO EMPLOYMENT STATUS, CLASSIFICATION AND RELATIONSHIP WITH THE COMPANY AND/OR ANY OTHER CLAIMS INVOLVING EMPLOYEE COMPENSATION ISSUES, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, THE FAIR LABOR STANDARDS ACT AND THE CALIFORNIA LABOR CODE.

- WE ALSO AGREE TO ARBITRATE ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE, BUT NOT DISPUTES ABOUT THE ENFORCEABILITY, REVOCABILITY OR VALIDITY OF THIS AGREEMENT TO ARBITRATE OR ANY PORTION HEREOF OR THE CLASS, COLLECTIVE AND REPRESENTATIVE PROCEEDING WAIVER HEREIN. WITH RESPECT TO ALL SUCH CLAIMS AND DISPUTES THAT WE AGREE TO ARBITRATE, WE HEREBY EXPRESSLY AGREE TO WAIVE, AND DO WAIVE, ANY RIGHT TO A TRIAL BY JURY.

**9.2 Class Action Waiver. WE EXPRESSLY INTEND AND AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, (1) CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION PROCEDURES SHALL NOT BE INVOKED, NOR WILL**

THEY APPLY, IN ANY ARBITRATION PURSUANT TO THIS AGREEMENT; (2) I WILL NOT ASSERT CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION CLAIMS AGAINST THE COMPANY IN ARBITRATION OR ANY OTHER FORUM; AND (3) I SHALL ONLY SUBMIT MY OWN INDIVIDUAL CLAIMS IN ARBITRATION AND WILL NOT SEEK TO REPRESENT THE INTERESTS OF ANY OTHER PERSON. NOTWITHSTANDING THE FOREGOING, I UNDERSTAND THAT I MAY BRING A PROCEEDING AS A PRIVATE ATTORNEY GENERAL AS PERMITTED BY LAW AND THAT NOTHING IN THIS AGREEMENT CONSTITUTES A WAIVER OF MY RIGHTS UNDER SECTION 7 OF THE NATIONAL LABOR RELATIONS ACT. WE FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

ANY ISSUE CONCERNING THE VALIDITY OF THIS CLASS ACTION, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER, AND WHETHER AN ACTION MAY PROCEED AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MUST BE DECIDED BY A COURT AND AN ARBITRATOR SHALL NOT HAVE AUTHORITY TO CONSIDER THE ISSUE OF THE VALIDITY OF THIS WAIVER OR WHETHER THE ACTION MAY PROCEED AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION. IF FOR ANY REASON THIS CLASS, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER IS FOUND TO BE UNENFORCEABLE, THE CLASS, COLLECTIVE OR REPRESENTATIVE CLAIM MAY ONLY BE HEARD IN COURT AND MAY NOT BE ARBITRATED. NO ARBITRATION AWARD OR DECISION WILL HAVE ANY PRECLUSIVE EFFECT AS TO ISSUES OR CLAIMS IN ANY DISPUTE WITH ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

**9.3 Procedure.** WE AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"), WHICH ARE AVAILABLE AT AT http://www.jamsadr.com/rules-employment-arbitration/ AND A PRINTED COPY IS AVAILABLE FROM HUMAN RESOURCES OR LEGAL. WE AGREE THAT THOSE RULES SHALL NOT BE CONSTRUED TO ALLOW CLASS ACTION ARBITRATION AND THAT A COURT, RATHER THAN THE ARBITRATOR, SHALL DECIDE CLASS-RELATED ISSUES. WE AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, AND MOTIONS TO DISMISS AND DEMURRERS, APPLYING THE STANDARDS SET FORTH IN GOVERNING LAW OF THIS AGREEMENT. WE AGREE THAT THE ARBITRATOR SHALL ISSUE A WRITTEN DECISION ON THE MERITS. WE ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER GOVERNING LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, WHERE PROVIDED BY APPLICABLE LAW. WE AGREE THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. WE AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH GOVERNING LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH GOVERNING LAW, GOVERNING LAW SHALL TAKE PRECEDENCE. WE AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SAN FRANCISCO COUNTY, CALIFORNIA, UNLESS I CHOOSE TO HAVE THE ARBITRATION IN THE COUNTY WHERE I PRIMARILY WORKED FOR THE COMPANY

AT THE TIME WHEN THE DISPUTE FIRST AROSE.

**9.4 Venue.** EXCEPT AS MANDATED BY GOVERNING LAW OR THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL VENUE FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY GOVERNING LAW AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE OR PARTICIPATE IN COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

**9.5 Claims Not Covered By Agreement.** WE UNDERSTAND AND AGREE THAT THIS AGREEMENT DOES NOT COVER THE FOLLOWING DISPUTES AND CLAIMS WHICH SHALL THEREFORE BE RESOLVED IN ANY APPROPRIATE FORUM AS REQUIRED BY THE LAWS IN EFFECT: CLAIMS FOR WORKERS' COMPENSATION BENEFITS, UNEMPLOYMENT INSURANCE, OR STATE OR FEDERAL DISABILITY INSURANCE; CLAIMS FOR TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF (INCLUDING A TEMPORARY RESTRAINING ORDER) IN AID OF ARBITRATION OR TO MAINTAIN THE STATUS QUO PENDING ARBITRATION, IN A COURT OF COMPETENT JURISDICTION IN ACCORDANCE WITH APPLICABLE LAW; OR ANY OTHER DISPUTE OR CLAIM THAT HAS BEEN EXPRESSLY EXCLUDED FROM ARBITRATION BY STATUTE. NOTHING IN THIS AGREEMENT SHOULD BE INTERPRETED AS RESTRICTING OR PROHIBITING ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE, OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY THAT IS AUTHORIZED TO ENFORCE OR ADMINISTER LAWS RELATED TO EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, THE DEPARTMENT OF LABOR, OR THE OCCUPATIONAL SAFETY AND HEALTH COMMISSION (EXCEPT THAT WE ACKNOWLEDGE THAT I MAY NOT RECOVER ANY MONETARY BENEFITS IN CONNECTION WITH ANY SUCH CLAIM, CHARGE OR PROCEEDING). A FEDERAL, STATE, OR LOCAL AGENCY WOULD ALSO BE ENTITLED TO INVESTIGATE THE CHARGE IN ACCORDANCE WITH APPLICABLE LAW. HOWEVER, ANY DISPUTE OR CLAIM THAT IS COVERED BY THIS AGREEMENT BUT NOT RESOLVED THROUGH THE FEDERAL, STATE, OR LOCAL AGENCY PROCEEDINGS MUST BE SUBMITTED TO ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT.

**9.6 Voluntary Nature of Agreement.** I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE TEXT OF CALIFORNIA LABOR CODE SECTION 2870 IN EXHIBIT B. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL OR HEARING BEFORE A JUDGE*. FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

**10.GENERAL PROVISIONS.**

**10.1 Governing Law; Venue under Certain Circumstances.** This Agreement and any dispute related hereto will be governed and interpreted by and under the laws of the State of California ("Governing Law"), unless I opt to arbitrate a dispute in the county where I primarily worked for the Company at the time the dispute first arose, in which case the law of the state where that county is located shall govern. If the arbitration provision in this Agreement is not enforced for any reason or it is necessary to seek an order from a court

to enforce arbitration or preserve the status quo via an injunction, I consent, with the understanding that the Company also consents in such circumstances, to the personal jurisdiction and venue in the state and federal courts for the county where the Company's principal place of business is located.

**10.2 Severability.** If any provision of this Agreement is held to be invalid or unenforceable for any reason, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

**10.3 Survival.** This Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor or other assignee, and shall be binding upon my heirs and legal representatives.

**10.4 At-will Employment.** I understand my employment with the Company is for an indefinite term and is "at-will." Accordingly, I understand and agree that either I or the Company may terminate this employment relationship at any time, with or without cause, and with or without notice. I understand this "at-will" relationship may be changed only by a written agreement entered into specifically for that purpose and signed by the Company's Chief Executive Officer and General Counsel. I also understand that my employment will be governed by the Company's various policies and programs, in writing and otherwise, that the Company may change those policies and programs from time to time in its discretion, and that no such policy or program modifications will change the voluntary "at-will" nature of my employment in any way.

**10.5 Notices.** Each party must deliver all notices or other communications required or permitted under this Agreement in writing to the other party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested) or by a nationally-recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each party may change its address for receipt of notice by giving notice of the change to the other party.

**10.6 Injunctive Relief.** I acknowledge that because my services are personal and unique and because I will have access to the Confidential Information of the Company, my breach of this Agreement would cause irreparable injury to the Company for which monetary damages would not be an adequate remedy and, therefore, will entitle the Company to injunctive relief (including specific performance). The rights and remedies provided to each party in this Agreement are cumulative and in addition to any other rights and remedies available to such party at law or in equity.

**10.7 Export.** I agree not to export, directly or indirectly, any U.S. technical data acquired from the Company or any products utilizing such data, to countries outside the United States, because such export could be in violation of the United States export laws or regulations.

**10.8 Entire Agreement.** If no other agreement governs nondisclosure and assignment of inventions during any period in which I am employed or am in the future retained by the Company as an independent contractor, the obligations pursuant to sections of this Agreement titled "Confidentiality" and "Inventions" shall apply to such period. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of that provision or any other provision on any other occasion. This Agreement is

the final, complete and exclusive agreement of the parties with respect to the subject matters hereof and supersedes and merges all prior communications between us with respect to such matters. No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by me and the CEO of the Company. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

This Agreement shall be effective as of the first day of my employment with the Company.

**EMPLOYEE**

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT AND HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS IT WITH INDEPENDENT LEGAL COUNSEL.

☑ Signature
Hunter Green 4/2/2018 6:48 PM
Checking the checkbox above is equivalent to a handwritten signature.

Title:
Retail Solar Adviser

Address 1:
2232 6th St

Address 2:

| City: | State: | Zip: |
|---|---|---|
| Berkeley | CA | 94710 |

**SUNRUN INC. ACCEPTED AND AGREED:**

*(Signature)*

By:
Chad Herring

Title:
VP, Human Resources

Date:
8/10/2018

Address:
595 Market Street, Floor 29
San Francisco, CA 94105

**EXHIBIT A**
**INVENTIONS**

**1. Prior Inventions Disclosure.** The following is a complete list of all my Prior Inventions:

☑ None

☐ See immediately below:

**2. Limited Exclusion Notification.**

**THIS IS TO NOTIFY** you in accordance with Section 2872 of the California Labor Code that the foregoing Agreement between you and the Company does not require you to assign or offer to assign to the Company any Invention that you develop entirely on your own time without using the Company's equipment, supplies, facilities or trade secret information, except for those Inventions that either:

**a.** Relate at the time of conception or reduction to practice to the Company's business, or actual or demonstrably anticipated research or development; or

**b .** Result from any work performed by you for the Company.

To the extent a provision in the foregoing Agreement purports to require you to assign an Invention otherwise excluded from the preceding paragraph, the provision is against the public policy of this state and is unenforceable.

This limited exclusion does not apply to any patent or Invention covered by a contract between the Company and the United States or any of its agencies requiring full title to such patent or Invention to be in the United States. Similar exclusions may apply under the laws of other states.

---

**EXHIBIT B**
**CALIFORNIA LABOR CODE SECTION 2870**

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    (2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.